UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                          **04-CR-305-A**

                    v.                             **NOTICE OF MOTION**

MICHAEL J. CULLIGAN,

                    Defendant.

_____

| | |
|---|---|
| **MOTIONS BY:** | Joseph B. Mistrett, Federal Defender, and Timothy W. Hoover, Assistant Federal Defender, attorneys for Defendant Michael J. Culligan. |
| **DATE, TIME & PLACE:** | Before the Honorable H. Kenneth Schroeder, Jr., United States Magistrate Judge, United States Courthouse, 68 Court Street, Buffalo, New York, on August 16, 2006, at 2:00 p.m. EDT. |
| **SUPPORTING PAPERS:** | Motions of Joseph B. Mistrett and Timothy W. Hoover, dated July 14, 2006 (attached), and dated March 15, 2006 (attached as Exhibit D). |
| **RELIEF REQUESTED:** | Relief as outlined in attached motions. |
| **WAS CONSENT OF OPPOSING COUNSEL SOUGHT?:** | No. |
| **WAS CONSENT OF OPPOSING COUNSEL GRANTED?:** | N/A. |
| **PROPOSED ORDER PROVIDED?:** | No. |
| **DATED:** | Buffalo, New York, July 14, 2006 |
| | /s/Timothy W. Hoover |

_____

Joseph B. Mistrett, Federal Defender
Timothy W. Hoover, Assistant Federal Defender
Office of the Federal Public Defender
Western District of New York
300 Pearl Street, Suite 450
Buffalo, NY 14202
(716) 551-3341
(716) 551-3346 FAX
joseph_mistrett@fd.org
timothy_hoover@fd.org
Counsel for Defendant Michael J. Culligan

AO 72A
(Rev. 8/82)

**EXHIBIT A TO DOCKET #8, NO. 06-CR-338-A (W.D.N.Y.)**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                           **04-CR-305-A**

                    v.                              **DEFENDANT'S MOTIONS**

MICHAEL J. CULLIGAN,

                    Defendant.

_____

**Introduction.**   Defendant Michael J. Culligan ("Defendant" or "Mr. Culligan" or "Culligan") files his motions.

**Factual and procedural background.**   Mr. Culligan is a now an ailing 58-year old former businessman whose wife, Sherry – who would have been a key witness at trial for the Defendant – passed away in 2001, at least one year after Mr. Culligan was informed that he was a possible target of an investigation, one to two years after the scheme allegedly ended, three and one-half years before the indictment was returned, and five years after the superseding indictment was returned.

At least one of the banks involved has recovered, by way of a civil suit/settlement, a six figure amount of money that was supposedly owed, confirming that this matter was, up until November 2004 when the indictment returned, handled by all involved (including the purported victim banks), as far as litigation is concerned, as a civil matter.

An Indictment was returned on November 16, 2004 (Docket #1).  The activities in the Indictment spanned from a period unknown to 1999.  *Id.*  Pre-trial proceedings took place, and motions were filed by Mr. Culligan on March 15, 2006 (Docket #20).  The document containing

-2-

Mr. Culligan's motions was 42 pages long; attached to the motions were three exhibits totaling

fourteen pages in length.  The government responded in opposition on March 30, 2006 (Docket

#22).  The document making up the government's response was 37 pages in length.  The Court

then prepared for oral argument.  Defense counsel prepared for oral argument.  Oral argument

was held on the motions on March 31, 2006, and argument lasted for 53 minutes (Docket #23).

The Court took the matters, including Mr. Culligan's various motions to dismiss the single count

Indictment, and his motion to suppress and a request for an evidentiary hearing, under

advisement.  The Court issued a written Order excluding time, for Speedy Trial Act purposes,

from May 1, 2006 to May 31, 2006, noting that the motions filed were "complex" (Docket #24,

at 2), and explaining that the Court had "made substantial progress toward a decision on the

motions" (Docket #24, at 1).

It was against this backdrop that the government obtained a five count Superseding

Indictment on Friday, May 5, 2006 (Docket #25), which reworked Count 1 and added Counts 2-

5.  This document was returned on the last day that the W.D.N.Y. May 2004 grand jury was

scheduled to sit, and two days before its term expired.  The document was returned over a month

after oral argument on the motions.

We have not, so far as we can tell or believe, received any additional discovery from the

government following the return of the Superseding Indictment.

**Motions.**  For his motions, Mr. Culligan incorporates by reference (and resubmits, as an

attachment at Exhibit D), motions 1 through 16 that he filed on March 15, 2006 at Docket #20.

Below, he adds supplemental argument in support of motion 4, and files additional motions

(motions 17, 18, 19 and 20).  A consecutive numbering system is used (and continued) for the

-3-

motions and exhibits, for the convenience of the Court.

We expand the motion at Dkt 20-1 to Counts 2, 3, 4 and 5 of the Superseding Indictment.

Defendant requests an evidentiary hearing, oral argument and leave to file a post-hearing memorandum of law regarding motions 4, 5, 17 and 18, and requests oral argument and leave to file a post-argument memorandum of law regarding the remainder of the motions.

Defendant gives notice of his intention to file reply memoranda in support of all his motions.

## IV.    MOTION TO DISMISS – UNCONSTITUTIONAL PRE-INDICTMENT DELAY (ADDITIONAL ARGUMENT)

The government's Superseding Indictment shockingly increases the pre-indictment delay in two substantial ways, by:  a) reaching back farther into the past (until 1997) than the Indictment did; and, b) delaying the charging of the crimes alleged in counts 1-5 to farther into the future – a period of 17.5 months after the return of the original Indictment and six years after the last criminal action was alleged to have occurred.  The pre-indictment delay in this case was unconstitutional even when the governing document was the November 2004 indictment.  The unconstitutionality of the pre-indictment delay is even more pronounced now, with a longer delay, with no justification, with prejudice to the Defendant (by way of the delay and the loss of the evidence that would be provided by his deceased wife, who passed away in 2001) more pronounced as well.

While there are new counts, the crimes charged are ancient and not based on any new evidence or new discovery of evidence.  Everything is alleged to have occurred at least six years before the return of the Superseding Indictment.  Counts 2 and 3 relate to actions in January or

-4-

March 1998.  Count 4 relates to a "period in 1999 and 2000" – whenever that is.  Count 5 relates to payments not made around April 1999.  All of these periods are before Mr. Culligan was informed that he was a target of a federal investigation in 2000.  None of the new charges relate to post-2000 information, actions or conduct.  The charges now stretch back to 1997, nine years before the return of the Superseding Indictment.

There was no rational, neutral or plausible reason for this shocking period of delay, and the only possibility that remains is that the delay was either designed to and/or had the effect of prejudicing Mr. Culligan's defense of this case.  No additional time was needed for a federal investigation, especially since four-plus years passed from the last criminal act to the return of the original Indictment.

Strangely, the Superseding Indictment was returned on the last week day that the May 2004 federal grand jury was sitting.  That the government was suddenly *in a hurry* to get the case superseded by the same grand jury that issued the original Indictment 17.5 months earlier does not excuse, or minimize the prejudice from, the pre-indictment delay period of 6 to 9 years for Counts 1-5 of the Superseding Indictment (from 1997 or 1999 or 2000, to May 2006).  While late stage superseding indictments have been seen, regrettably, with unfortunate frequency in this district, including on the eve of trial and after motions are filed, no case that we are aware of can match the delay between the alleged crimes and the return of the superseding indictment in this case.

The delay here deviates from fundamental notions of fair play.  Mr. Culligan has been severely prejudiced as a result, and the case must be dismissed with prejudice.  To hold otherwise would be to render meaningless the protections of the Due Process Clause, where the delay was

AO 72A
(Rev. 8/82)

not needed to gather evidence or investigate, and is inordinately long.  This is a rare case where a

Due Process violation has occurred and dismissal is required.

## XVII.  MOTION TO DISMISS SUPERSEDING INDICTMENT FOR VIOLATION OF THE DUE PROCESS CLAUSE, AND UNDER FED. R. CRIM. P. 48(b)

The Fifth Amendment's Due Process Clause protects a defendant from an indictment

delayed intentionally or recklessly by the prosecution for strategic advantage, or where a

defendant suffers actual prejudice from the delay.  *See United States v. Lovasco*, 431 U.S. 783,

788-90, 97 S. Ct. 2044, 2048-49 (1977).

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions,

the accused shall enjoy the right to a speedy and public trial, . . . and to be informed of the nature

and cause of the accusation."  *See also, e.g.*, *Doggett v. United States*, 505 U.S. 647, 112 S. Ct.

2686 (1992).

The Speedy Trial Act provides for specific time limits for prosecution and trial of federal

criminal cases.  *See* 18 U.S.C. §§ 3161 to 3174.  In particular, an indictment must be filed

"within thirty days from the date on which" a defendant was "arrested or served with a summons

in connection with" criminal charges.  *See* 18 U.S.C. § 3161(b).  In the event of breach of this

time limitation, the charges "shall be dismissed or otherwise dropped."  *See* 18 U.S.C. §

3162(a)(1); *United States v. Bilotta*, 645 F. Supp. 369 (1986) (dismissing a superseding

indictment that added detail to charges alleged in original indictment, but did so more than thirty

days after defendant had been arrested or served with summons in connection with the charges),

*aff'd*, 835 F.2d 1430 (2d Cir. 1987); *United States v. Van Brandy,* 563 F. Supp. 438 (S.D. Cal.

1983).

In addition, Federal Rule of Criminal Procedure 48(b) grants a court broad discretion to dismiss an indictment for "unnecessary delay." *See also, e.g.*, *United States v. Lane*, 561 F.2d 1075, 1078-79 (2d Cir. 1977); *United States v. Salzmann*, 417 F. Supp. 1139, 1171-74 (E.D.N.Y.), *aff'd*, 548 F.2d 395 (2d Cir. 1976); *United States v. Kovacs*, 150 F. Supp. 301 (E.D.N.Y. 1957). This authority of the court is independent of the constitutional and Speedy Trial considerations, so that a court is empowered to dismiss an indictment for unnecessary delay even where the Sixth Amendment and Speedy Trial Act have not been violated. *See Lane*, 561 F.2d at 1078; *Salzmann*, 417 F. Supp. at 1171.

In this case, each of these constitutional, statutory, judicial, and regulatory authorities should cause this Court to dismiss the government's superseding indictment and require the government to proceed on its original indictment. The Superseding Indictment, through the effort to clean up and spiff up Count 1 (in response, in part, to prior motions to dismiss (Dkt #20-1, 20-2) for omitting an element of the offense, and material facts), to adding new counts (Counts 2-5) in case Count 1 fails, is designed to give the government an advantage and to strategically advance the government's desire to secure a criminal conviction, at the expense of Mr. Culligan's Due Process and statutory rights. Whether or not the government characterizes the Superseding Indictment as simply clarifying the existing Indictment or as adding new charges, either tack requires dismissal, because the government is seeking an advantage at the expense of timely and speedy trial, with severe prejudice to Mr. Cullgan. Pursuant to the Constitution, and its power under Fed. R. Crim. P. 48(b) to prevent unnecessary delay, the Superseding Indictment must be dismissed.

-7-

Case 1:06-cr-00333-RJA   Document 29   Filed 07/14/2006   Page 8 of 83

**XVIII.** **MOTION FOR THE COURT TO REVIEW ALL GRAND JURY TRANSCRIPTS TO DETERMINE IF THE SUPERSEDING INDICTMENT WAS ISSUED BY AN INDEPENDENT AND UNBIASED GRAND JURY, AND IF IT WAS NOT, MOTION TO DISMISS FOR VIOLATION OF THE FIFTH AMENDMENT**

17.5 months after the return of the Indictment by the May 2004 grand jury, and two days before that grand jury was set to expire, the government obtained the Superseding Indictment on May 5, 2006.  We are concerned that it is possible that the grand jury that returned the Superseding Indictment was not independent and unbiased, and that it is possible that it may have been led to issue the Superseding Indictment by way of improper instructions or information relating to, at a minimum, why Count 1 had to be changed.  We move the Court to a) inspect all of the grand jury minutes/transcripts relating to the return of the Indictment and Superseding Indictment; b) disclose those minutes/transcripts to the Defendant; and, c) if the grand jury was not independent and unbiased in returning the Superseding Indictment, to dismiss the Superseding Indictment.

Chief Judge Arcara took all of these steps in *United States v. Leeper*, No. 06-CR-58-A (W.D.N.Y.), where, upon inspection of grand jury proceedings that led to the return of a superseding indictment, the Court concluded that the grand jury that returned the superseding indictment there was not unbiased and was not independent.  A copy of Chief Judge Arcara's decision in *Leeper* is attached as Exhibit E.

Our motion is based on the Fifth Amendment's grand jury clause, which requires that an indictment issued from an "*independent* and *unbiased* grand jury.  This requirement has long been recognized.  *See Costello v. United States*, 50 U.S. 359 (1956); *see also Stirone v. United States*, 361 U.S. 212, 218-19 . . . ."  *Leeper*, slip op. at 4-5 (Exhibit D).

-8-

While we do not have any actual information about what did or did not occur in the grand jury the led up to the issuance of the Superseding Indictment, that is because the grand jury process is secret and such information is not available to the Defendant or defense counsel. Together with the circumstances which suggest that inquiry is appropriate, this is why the Court should review all of the grand jury minutes/transcripts to determine whether the Superseding Indictment was issued by an independent and unbiased grand jury.

We recognize that this situation is different than *Leeper* in that different grand juries issued the original indictment and the superseding indictment at issue there. However, the following confirm that inquiry is appropriate here: a) the long delay between the issuance of the Indictment and Superseding Indictment; b) the issuance of the Superseding Indictment on the last day that the grand jury was sitting (and two days before it expiration (*see Leeper*, slip op. at 3, 3 n.1); c) the issuance of a Superseding Indictment with a re-worked Count 1 and the addition of other counts in the face of Defendant's legal attacks (for legal and factual insufficiency) on Count 1 in the original Indictment; and, d) the return of the Superseding Indictment before the government was put on notice (via the *Leeper* decision) that certain advice and instructions and methods of proceeding in seeking a superseding indictment could lead to dismissal of the returned charges.

It may be that the grand jury was independent and unbiased, but at a minimum, the Court needs to conduct an *in camera* review to make such a determination. If there are suggestions that the grand jury was not unbiased and independent, the should a) disclose the grand jury transcripts to the Defendant, order further briefing, and then dismiss the Superseding Indictment, or, b) dismiss the Superseding Indictment.

-9-

## XIX.   MOTION TO DISMISS COUNT 4 FOR FAILING TO STATE AN OFFENSE

Count 4 does not allege a crime and therefore must be dismissed.

Count 4 alleges that in an effort to execute to execute a scheme to defraud, Mr. Culligan "caused installment payments to be made to M&T Bank on account of the loan" discussed in that count.  Superseding Indictment, at 8.

It is not, and cannot be a crime to *pay* a bank money that it is owed.  The concept boggles the mind.  We understand the government's attempts to plead an "attempt to execute and to execute the scheme and artifice to defraud" that is alleged in the Indictment.  Still, *making* payments that were owed on a loan do not come close, as a matter of reality, to facilitating a scheme to defraud, when such scheme has already, if the government is to be believed, been completed.  At best, the government suggests acts in Count 4 that were *not* a part of a criminal scheme to defraud, because whatever machinations related to the trade-in and paperwork occurred, the bank was getting all the monies it was owed, and nothing less.  There may be some civil violations or contract breaches alleged in Count 4, but nothing criminal is alleged. Payments to bank did not change its security interest, and everything in Count 4 evinces not a scheme, but actions by which the bank received everything it was due.  Despite reciting the statutory language, because the actions alleged in the count do not evince an intent to defraud (and in fact, evince an intent to give the bank what it is owed), Count 4 must be dismissed.

There was simply no criminal fraud (or intent to defraud) as alleged in Count 4, because no harm or loss to the bank was contemplated by Mr. Culligan or by way of his actions as charged in Count 4.  *United States v. Thomas*, 315 F.3d. 190, 200 (3d Cir. 2003).  Count 4 must be dismissed.

-10-

## XX.    MOTION TO DISMISS COUNT 5 FOR FAILING TO STATE AN OFFENSE

Count 5 must be dismissed because it attempts to attach criminal activity to . . . doing

nothing, to taking no action, to inaction.  As alleged in Count 5, Mr. Culligan "did not pay off

Sovereign Bank's loan secured by the aforesaid 1997 Oldsmobile Achieva."  Superseding

Indictment, at 9.  There remains an actus reus requirement – that hoary, time-honored principle of

criminal law – as part of a bank fraud violation, that much we firmly believe, and continue to

believe.  *See, e.g.*, *United States v. Leahy*, 445 F.3d 634, 645 n.10 (3d Cir. 2006).  As a result,

Count 5 must be dismissed.

DATED:   Buffalo, New York, July 14, 2006

Respectfully submitted,

/s/Timothy W. Hoover

_____
Joseph B. Mistrett, Federal Defender
Timothy W. Hoover, Assistant Federal Defender
Office of the Federal Public Defender
Western District of New York
300 Pearl Street, Suite 450
Buffalo, NY 14202
(716) 551-3341
(716) 551-3346 FAX
joseph_mistrett@fd.org
timothy_hoover@fd.org
Counsel for Defendant Michael Culligan

AO 72A
(Rev. 8/82)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                           04-CR-305-A

                    v.

MICHAEL J. CULLIGAN,

                    Defendant.

_____

### CERTIFICATE OF SERVICE

The undersigned certifies that he is an employee of the Federal Public Defender's Office for the Western District of New York, 300 Pearl Street, Buffalo, New York, and is of such age to serve papers.

On **July 14, 2006,** he served a copy of the attached by electronic service via CM/ECF:

ADDRESSEE:          William J. Gillmeister
                    Assistant United States Attorney
                    Western District of New York
                    138 Delaware Ave., Federal Centre
                    Buffalo, NY 14202
                    william.j.gillmeister@usdoj.gov

On **July 14, 2006**, he served a copy of the attached by: (  ) First Class United States Mail; (  ) hand delivery; (  ) facsimile; or, (  ) electronic mail:

ADDRESSEE:          [None]

                                        /s/Timothy W. Hoover
                                        _____
                                        Joseph B. Mistrett, Federal Defender
                                        Timothy W. Hoover, Assistant Federal Defender
                                        Office of the Federal Public Defender
                                        Western District of New York
                                        300 Pearl Street, Suite 450
                                        Buffalo, NY 14202
                                        (716) 551-3341
                                        (716) 551-3346 FAX
                                        joseph_mistrett@fd.org
                                        timothy_hoover@fd.org
                                        Counsel for Defendant Michael J. Culligan

## 04-CR-305-A

*UNITED STATES DISTRICT COURT*

*for the*

*WESTERN DISTRICT OF NEW YORK*

UNITED STATES OF AMERICA,

v.

MICHAEL J. CULLIGAN,

Defendant.

**NOTICE OF MOTION**

**JOSEPH B. MISTRETT**
**Federal Defender**

**TIMOTHY W. HOOVER**
**Assistant Federal Defender**

**Of Counsel**

CM-ECF Filed July 14, 2006

*Office of the*
**Federal Public Defender**
**300 Pearl Street, Suite 450**
**Buffalo, New York 14202**
**(716) 551-3341**

**DEFENDANT'S
EXHIBIT D**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                          **04-CR-305-A**

            v.                                   **NOTICE OF MOTION**

MICHAEL J. CULLIGAN,

            Defendant.

_____

| | |
|---|---|
| **MOTIONS BY:** | Joseph B. Mistrett, Federal Defender, and Timothy W. Hoover, Assistant Federal Defender, attorneys for Defendant Michael J. Culligan. |
| **DATE, TIME & PLACE:** | Before the Honorable H. Kenneth Schroeder, Jr., United States Magistrate Judge, United States Courthouse, 68 Court Street, Buffalo, New York, on March 31, 2006 at 2:00 p.m. EDT. |
| **SUPPORTING PAPERS:** | Motions of Joseph B. Mistrett and Timothy W. Hoover, dated March 15, 2006. |
| **RELIEF REQUESTED:** | Relief as outlined in attached motions. |
| **WAS CONSENT OF OPPOSING COUNSEL SOUGHT?:** | No. |
| **WAS CONSENT OF OPPOSING COUNSEL GRANTED?:** | N/A. |
| **PROPOSED ORDER PROVIDED?:** | No. |
| **DATED:** | Buffalo, New York, March 15, 2006 |

                                    /s/Timothy W. Hoover

                 _____

Joseph B. Mistrett, Federal Defender
Timothy W. Hoover, Assistant Federal Defender
Office of the Federal Public Defender
Western District of New York
300 Pearl Street, Suite 450
Buffalo, NY 14202
(716) 551-3341
(716) 551-3346 FAX
joseph_mistrett@fd.org
timothy_hoover@fd.org
Counsel for Defendant Michael J. Culligan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                                    **04-CR-305-A**

                          v.                                 **DEFENDANT'S MOTIONS**

MICHAEL J. CULLIGAN,

                          Defendant.

_____


        Defendant Michael J. Culligan ("Defendant" or "Mr. Culligan" or "Culligan") files the

following motions and requests for relief.

        As background, Defendant is charged in a single defendant, single count indictment with

knowingly executing and attempting to execute a scheme and artifice to defraud "various banks,"

from "[b]eginning at a time unknown to the Grand Jury and continuing through 1999 . . . " The

caption of the indictment indicates that the crime charged is "Title 18, United States Code,

Sections 1344(a) and (2)."  This is confusing, because there is no 18 U.S.C. § 1344(a).  The last

sentence of Indictment indicates that the conduct charged is "in violation of Title 18, United

States Code, Section 1344(1) and Section 2."  Indictment (Nov. 16, 2004) (Docket #1).

        Mr. Culligan is a 57 year old former businessman whose wife, Sherry – who would have

been a key witness at trial for the Defendant – passed away in 2001, at least one year after Mr.

Culligan was informed that he was a possible target of an investigation, two years after the

scheme allegedly ended, three and one-half years before the indictment was returned, and almost

five years ago from today.

        At least one of the banks involved has recovered, by way of a civil suit/settlement, a six

                                               -2-

figure amount of money that was supposedly owed, confirming that this matter was, up until

November 2004 when the indictment returned, handled by all involved (including the purported

victim banks), as far as litigation is concerned, as a civil matter.

The motions included below – including the four separate motions to dismiss the

Indictment – should be considered separate motions and requests for relief, but are filed together

in one pleading for the convenience of the Court and opposing counsel.  It is for that reason that

the *combined* motions exceed 25 pages in length – no individual motion exceeds 25 pages in

length.

Defendant requests an evidentiary hearing, oral argument and leave to file a post-hearing

memorandum of law regarding motions four and five, and requests oral argument and leave to

file a post-argument memorandum of law regarding the remainder of the motions.

Defendant gives notice of his intention to file reply memoranda in support of all of the

following motions.

## I.     MOTION TO DISMISS – THE INDICTMENT IS DEFECTIVE FOR FAILING TO ALLEGE MATERIALITY, AN ESSENTIAL ELEMENT OF THE OFFENSE

### A.     <u>Introduction</u>

The Court must dismiss the Indictment because the Indictment fails to allege materiality

of falsehood, an essential part of "scheme or artifice to defraud" and an essential part of the bank

fraud offense charged.  The single count Indictment nowhere alleges that any misrepresentation

that Mr. Culligan allegedly made was material.  That is fatal to the Indictment and it must be

dismissed, because it is pellucidly clear that materiality is an element of a "scheme or artifice to

defraud" under 18 U.S.C. § 1344(a).  *Neder v. United States*, 527 U.S. 1, 25 (1999).  Where an

indictment charging bank fraud in violation of 18 U.S.C. § 1344(1) does not allege materiality,

-3-

the indictment is fatally flawed and must be dismissed. *United States v. Omer*, 395 F.3d 1087,

1089 (9th Cir. 2005) (per curiam), *panel reh'g and reh'g en banc denied*, 429 F.3d 845 (9th Cir.

2005).

### B. Background: the Indictment nowhere alleges or even mentions materiality

The Indictment is a single count, single defendant, three page document that nowhere

alleges materiality, nor even mentions the term.

Paragraph 1 of the Indictment alleges that Mr. Culligan "knowingly executed and

attempted to execute a scheme and artifice to defraud various banks whose deposits were insured

by the Federal Deposit Insurance Corporation, including Marine Midland Bank ("Marine

Midland"), now known as HSBC Bank, USA." Materiality is not alleged in this paragraph.

Paragraphs 2 and 3 contain factual allegations regarding the alleged scheme and how it

worked, and do not allege materiality. Paragraph 2 alleges that Mr. Culligan caused vehicles that

had been pledged as security for loans made to the person trading in the vehicles to be resold as f

they were free and clear of the lending banks' security interests and liens, when he knew they

were not. No allegation of materiality here. Paragraph 3 claims that "[i]t was part of the scheme

or artifice to defraud that CULLIGAN caused false lien release documents to be prepared to that

vehicles could be resold as if they were free and clear of the lending banks' security interests and

liens when he knew that they were not." No allegation or mention of materiality appears in

Paragraph 3.

Paragraph 4 alleges that the purpose of the scheme was to have use of cash proceeds

without knowledge of the banks to whom the vehicles had been pledged. There is no allegation

or mention of materiality in Paragraph 4.

Paragraph 5 offers one specific factual allegation regarding the preparation of a false lien release document on or about March 10, 1998, but no allegation of materiality is made in the paragraph.

The sixth, unnumbered paragraph states that all of this was in violation of 18 U.S.C. §§ 2, 1344(1).

**C.    The bank fraud statute – materiality is an element**

It was conclusively settled by the United States Supreme Court in *Neder* that "materiality of falsehood is an element of the . . . bank fraud statute[]." *Neder*, 527 U.S. at 25.  The element is implicitly contained within the text of the statute that bars "any scheme or artifice to defraud" a financial institution because the text of the statute enacted by Congress incorporates the established meaning of the term "defraud" from the common law.  *Id.* at 22.  The Court explained that, "as the sources we are aware of demonstrate, the common law could not have conceived of 'fraud' without proof of materiality." *Id.*

**D.    A bank fraud indictment is fatally flawed and must be dismissed where it does not allege the essential element of materiality**

The Indictment must be dismissed because materiality is an essential element of the offense and it is nowhere mentioned, let alone alleged, in the Indictment.

This uncontroversial conclusion is confirmed by the leading case addressing this precise issue, where the court was presented with the identical flaw in a bank fraud indictment that exists here. *United States v. Omer*, 395 F.3d 1087 (9th Cir.) (per curiam), *panel reh'g and reh'g en banc denied*, 429 F.3d 845 (9th Cir. 2005).  In *Omer*, the defendant was charged by indictment with bank fraud in violation of 18 U.S.C. § 1344(1).  *Id.* at 1088.  Before trial, the defendant moved to dismiss the indictment because "the indictment failed to allege materiality of the fraud." *Id.*  The

indictment did, in fact, "fail[] to recite an essential element of the charged offense– materiality of falsehood." *Id.* The indictment "does allege that Omer knowingly executed or attempted to execute a scheme or artifice to defraud specific financial institutions through a check kiting scheme." *Id.*

The *Omer* court explained that in "*Neder*, however, the Supreme Court held that 'materiality of falsehood is an element' of § 1344(1). 527 U.S. at 25. The Supreme Court determined that the language of § 1344(1), which requires proof of any 'scheme or artifice to defraud an institution,' incorporates the well-settled common-law meaning of fraud and thus requires the prosecution to prove a misrepresentation or concealed of a material fact to support a conviction. *Id.* at 22-23." *Omer*, 395 F.3d at 1088-89. As a result, "materiality of the scheme is an essential element of bank fraud in violation of 18 U.S.C. § 1344(1) . . . . [and] materiality must be alleged in the indictment." *Id.* at 1089. As a result, even on appeal from a jury conviction, "the indictment's failure to recite an essential element of the charged offense, namely the materiality of the scheme or artifice to defraud, is a fatal flaw requiring dismissal of the indictment." *Id.*

The straightforward holding of *Omer*, compelled by *Neder*, controls this case. Where the indictment – as here – does not allege all the essential elements of the offense, then the indictment must be dismissed. It is no answer to claim that because the scheme is set out in some detail, that materiality can be assumed from the factual allegations and thus the indictment is sufficient. After all, if that was the case, then the indictment in *Omer* would have been sufficient, because it was factually pleaded that the defendant attempted to defraud specific financial institutions through a check-kiting scheme. *Id.* at 1088. Here, materiality is not

-6-

mentioned, alleged, or even addressed in the Indictment in any way whatsoever.

### E.    Conclusion

The Indictment must be dismissed because it fails to state an essential element of the

charged bank fraud offense.

## II.    MOTION TO DISMISS – THE INDICTMENT IS DEFECTIVE AS A MATTER OF LAW BECAUSE IT FAILS TO CONTAIN AN ESSENTIAL FACT (THE IDENTITY OF ALL THE VICTIM BANKS AND THE OTHER ALLEGED MISREPRESENTATIONS)

The Indictment must be dismissed, under Fed. R. Crim. P. 7(c), because it is invalid and

defective as a matter of law, as the Indictment fails to name essential facts constituting the

offense charged – that is, Indictment fails to name the victim financial institutions (other than

one bank) and representations allegedly made as to all banks (except one specific instance in

paragraph 5 of the Indictment as to one bank).  The identity of the victim financial institutions is

"essential" in order for the Indictment to be a legally valid Indictment.

The Indictment alleges a scheme to defraud "*various banks* whose deposits were insured

by the Federal Deposit Insurance Corporation, *including* Marine Midland Bank ('Marine

Midland'), now known as HSBC Bank, USA."  Indictment ¶1, at 1 (emphasis added).  Not only

is just one financial institution named, but the Indictment alleges that "various" other financial

institutions were defrauded, without naming them.  The unmistakable implication is that the

identity of the other financial institutions is known to the government.  The pat language

"unknown to the grand jury," that is a part of so many indictments when some identification fact

is not known, is not used in the Indictment.

As to alleged misrepresentations as part of the scheme, only one specific fact is alleged –

that a particular false affidavit was caused to be prepared by Mr. Culligan on or about March

AO 72A
(Rev. 8/82)

1998 relating to a vehicle that the one named bank, Marine Midland, had a lien on.   Indictment

¶5, at 2-3.  No specific misrepresentations or facts are alleged as to any of the other financial

institutions that are not identified in the Indictment, nor are any other allegations made as to any

other dealings with Marine Midland.   However, given that the government knows the identity

of the other financial institutions, the government surely is aware of the specific

misrepresentations that were allegedly made to those financial institutions and the specific motor

vehicles involved.

     As to the other parts of the Indictment, the time period in the Indictment is a substantially

broad one – "[b]eginning at a time unknown to the Grand Jury and continuing through 1999 . . .

."  Indictment ¶1, at 1.  The geographic area in which the alleged scheme to defraud occurred is

extremely broad, that is, "the Western District of New York . . . ."  *Id.*  The offense charged is a

substantive bank fraud offense alleged to be a scheme to defraud with multiple, known victims,

even though only one bank is identified.  There is no question that the nature of the offense

charged requires the existence of a victim in order for a crime to have been committed.

     Federal Rule of Criminal Procedure 7(c)(1) provides that "[t]he indictment or information

must be a plain, concise, and definite written statement of the essential facts constituting the

offense charge . . . ."  This Court has explained that "[t]he identities of the 'victims' are at 'the

very core of criminality.'" Report and Recommendation, at 5, *United States v. Solovey*, No. 04-

CR-244-S (W.D.N.Y.) (May 31, 2005) ("*Solovey I*") (citing *Russell v. United States*, 369 U.S.

749, 764 (1962); *United States v. Rizzo*, 373 F.Supp. 204, 207 (S.D.N.Y. 1973); *United States v*

*Agone*, 302 F.Supp. 1258, 1260 (S.D.N.Y. 1973)), *adopted,* Decision and Order, No. 04-CR-

244-S (W.D.N.Y.) (July 29, 2005) ("*Solovey II*").  Where "'the class of possible victims has a

substantial membership' . . . the indictment . . . is 'excessively and prejudicially uncertain.'"

*Solovey I* at 5 (citing *Agone*, 302 F.Supp. at 1260 (internal citations omitted)).

　　　As this Court outlined in *Solovey I*, the United States Court of Appeals for the Second

Circuit, in persuasive dictum, has explained that:

> the government should name the alleged victims, when known, in
> the indictment containing charges such as those at issue here.
> *United States v. Orena*, 32 F.3d 704, 714-15 (2d Cir. 1994). Such
> requirement prevents the prosecution from feeling "free to fill in
> this vital missing element – free, in a way, which is
> constitutionally grave whether or not it is highly probable, to name
> someone different from the one intended by the grand jury. A
> prosecutorial power to roam at large in this fashion is not
> allowable." *United States v. Agone*, *supra* at 1261 citing *Russell v.
> United States*, 367 U.S. 749, 768-771 (1962).

*Solovey I* at 5-6 (one set of internal quotation marks omitted). In a case where the victim is a

victim of fraud, "[a]n indictment should name . . . the persons defrauded when they are known by

the government." *Orena*, 32 F.3d at 714-15.

　　　In *Solovey I*, the Court recommended dismissal of the indictment where the indictment

failed to name the victims of the defendant's alleged violations of 18 U.S.C. § 1512(a)(2). The

Court recommended dismissal because the victim(s) identity/ies was/were  known to the

government but not included in the indictment, even though the government claimed there were

concerns about witness tampering with the victim/s, and the government proposed to later

provide the victim information via a non-indictment means, such as a by a bill of particulars.

*Solovey I*, at 5-8. The indictment was "excessively and prejudicially uncertain" because the

victim's names were not included in the indictment as they were known to the government.  *Id.* at

5 (internal quotation marks omitted). The government's offer to identify the victims before trial

was rightfully rejected by the Court, as such a "response further buttresses the need to prevent

-9-

the prosecution from being able 'to roam at large - to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal.'" *Id.* at 7 (quoting *Russell*, 367 U.S. at 768). Nor would a bill of particulars save the defective indictment, because "'it is a settled rule that a bill of particulars cannot save an invalid indictment.'" *Id.* at 8 (quoting *Russell*, 367 U.S. at 769; citing *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999)). The Court's recommendation was adopted in almost every respect by the District Court in *Solovey II.*

The same conclusion must be reached here. Despite the government knowing the identities of the other financial institutions, the Grand Jury did not include them in the sole count of the Indictment that was returned – save the reference to Marine Midland. This renders the Indictment excessively and prejudicial. The Defendant has no idea who the victims are, and they are not included in the Indictment, and are subject to disclosure by the government at a later time, without any ability to determine if those victims were actually part of the Indictment that the grand jury returned. The government cannot be allowed to fill in the essential elements of unlawful conduct as the proceedings go along, whether or not the grand jury passed on them – particularly where the grand jury may have passed on them and found no crime occurred as to certain financial institutions. The naming of one financial institution as to one alleged false action does not cure the overwhelming defect of the Indictment, because it does not foreclose the ability of the government to roam at large – the inclusion of "various banks" and "including" language opens up endless possibilities as to the banks, vehicles and liens that could be inserted to allow the government to try to get a conviction.

While there are trial preparation concerns here, any later disclosure or bill of particulars would not remedy the fatal defect of the Indictment in the first instance. How could it, where a

-10-

non-grand jury returned document prepared by prosecutors cannot take the place of a validly-returned grand jury Indictment. The Indictment here evinces a government prosecution that either has, or will, roam at large to fill in missing factual and legal elements as trial approaches. This is what is barred by Rule 7(c), federal court precedent, and *Solovey I* and *II*.

The Indictment must be dismissed.

## III.    MOTION TO DISMISS – THE SOLE COUNT IS DUPLICITOUS

A third, independent defect (although flowing from the other defects of the single count Indictment) requires that the Indictment be dismissed. Because the scheme alleged in the Indictment refers to various unidentified banks, and various unnamed alleged actions, the Indictment is improperly duplicitous, as more than one offense is charged in a single count.

An indictment that joins two or more distinct crimes in a single count is duplicitous. *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992); *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980). Duplicitous counts implicate due process concerns. The main problem with duplicity is that the jury may convict a defendant without unanimous agreement. *United States v. Karam*, 37 F.3d 1280, 1286 (8th Cir. 1994). In addition, a duplicitous indictment creates the risk that a defendant will not have adequate notice of the charges and will not be protected against double jeopardy. *See Aracri*, 968 F.2d at 1518 (quoting *United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir. 1981)). A duplicitous count that implicates these due process concerns should be dismissed. *See United States v. Tanner*, 471 F.2d 128, 139 (7th Cir. 1972) (dismissing a duplicitous count that implicated double jeopardy concerns).

The United States Court of Appeals for the Second Circuit has neatly canvassed the issues bundled in a claim of duplicity:

-11-

> The vice of a duplicitous charge is that it risks to impair "a
> defendant's rights to notice of the charge against him, to a
> unanimous verdict, to appropriate sentencing and to protection
> against double jeopardy in a subsequent prosecution." *United
> States v. Murray,* 618 F.2d 892, 896 (2d Cir. 1980). This is so
> because a general verdict of guilty on a duplicitous count will not
> reveal whether the jury reached a unanimous verdict on each
> offense and "whether the jury found defendant guilty of only one
> crime and not the other, or guilty of both." Id. However, an
> indictment is not defective if it alleges "in a single count . . . the
> commission of a crime by several means." Id. We thus distinguish
> between improperly charging separate offenses in one count and
> properly charging separate means of committing a single crime in
> a single count.

*United States v. Crisci*, 273 F.3d 235, 238-39 (2d Cir. 2001) (per curiam).

Our argument here is simple: the Indictment, through the lack of specification and

omission of essential factual elements, could be construed by either the government or the jury to

charge more than one bank fraud count as part of the sweeping "scheme to defraud" that is

alleged.  It is undoubted that the alleged scheme includes an unknown and unspecified amount of

victim banks and misrepresentations.  It is unknown whether or not one or multiple schemes to

defraud are charged, and that makes the single count duplicitous.  There would be no way of

knowing, in the event of a conviction, what scheme was proven, what charges were considered,

and whether additional charges are or are not barred by the Double Jeopardy Clause.  We have

no idea now whether or not multiple bank fraud crimes are charged, and at trial, the jury would

improperly be able to convict him of any particular scheme it found.  This is the heart of what

the bar against a duplicitous count prevents.  The sole count of the Indictment must be dismissed.

## IV.    MOTION TO DISMISS – UNCONSTITUTIONAL PRE-INDICTMENT DELAY

From the time that the alleged crime ended (sometime in 1999) to the date of indictment

(November 2004) was at least five years.  The Indictment was returned almost six and one-half

years after civil litigation had commenced (in June 1998) that led to the instant criminal charges.
The Indictment was returned almost four and one half years after (in June 2000 (approximately))
that Mr. Culligan had been named as a target and had been assigned counsel.  This type of
interminable delay, resulting in real, palpable prejudice to Mr. Culligan's ability to defend
himself, violates the Constitution.  The Court should dismiss the Indictment, with prejudice,
based on the pre-indictment delay.

The United States Supreme Court has noted that "the statute of limitations does not fully
define [defendant]'s right with respect to the event occurring prior to indictment." *United States
v. Marion*, 404 U.S. 307, 324 (1971).  The dictates of fundamental fairness and due process
contained in the Fifth Amendment to the United States Constitution provide further protection
against prejudicial pre-indictment delay.  *United States v. McDonald*, 456 U.S. 1, 8 (1982).

Thus, an indictment brought within the time constraints of the statute may nevertheless
violate due process where pre-indictment delay has been shown to cause "substantial prejudice"
to the defendant's ability to present his defense and "the delay was an intentional device to gain
[a] tactical advantage over the accused." *Marion*, 404 U.S. at 324.

Where delay prejudices the presentation of a defense and is engaged in for an improper
purpose it violates the Due Process Clause because such conduct departs from fundamental
notions of "fair play." *United States v. Lovasco*, 431 U.S. 783 (1977).  The Supreme Court
further explained in *Lovasco*, that the determination of the existence of a due process violation
due to pre-indictment delay is essentially a balancing test whereby the prejudice to the defendant
caused by such delay is weighed against the government's justification for the delay.  *Id.* at 799.

The Defendant bears the burden of proving both that he suffered actual prejudice because

-13-

of the alleged pre-indictment delay and that such delay was a course intentionally pursued by the government for an improper purpose. *See United States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir. 1990); *United States v. Hoo*, 825 F.2d 667, 671 (2d Cir.1987).

Prejudice in this context has meant that sort of deprivation that impairs a defendant's right to a fair trial. *See United States v. Elsbery*, 602 F.2d 1054, 1059 (2d Cir.1979).

This kind of prejudice is commonly demonstrated by the loss of documentary evidence or the unavailability of a key witness. *See, e.g., Lovasco*, 431 U.S. at 796 (accepting defendant's claim of prejudice based on loss of testimony of two material witnesses but finding no due process violation because delay was not improper); *Marion*, 404 U.S. at 325-26 (rejecting due process claims as speculative and premature, but commenting that "actual prejudice" may be shown if "memories ... dim, witnesses become inaccessible, and evidence [is] lost").

The offenses alleged in the Indictment are claimed to have occurred "[b]eginning at a time unknown to the Grand Jury and continuing through 1999." The Indictment was not returned until November 16, 2004, nearly five years from the alleged end of the "scheme to defraud."

This is particularly troubling given that the government had in its possession the affidavit of William Bartlett, an Assistant Vice-President of then-named Marine Midland Bank since, it appears, 1998. Moreover, Mr. Culligan's business records and documents were seized in June 1998.

Moreover, the government first initiated plea discussions as far back as January 2001. Therefore, there is no legitimate basis for the lengthy delay in prosecuting this action other than to gain a tactical advantage over Mr. Culligan. Mr. Culligan's Fifth Amendment right to a fair

-14-

trial has been substantially prejudiced and violated by the above described pre-indictment delay.

It is further submitted that the pre-indictment delay has allowed the prosecution to gain tactical advantage over the accused in that the Defendant will now have to attempt to locate witnesses, who may or may not be available, who may or may not have recollections about events which may have taken place a minimum of six to seven years ago (and likely longer), and whose recollections will be seriously impaired by the passage of so much time.

Mr. Culligan alleges that said delay may also affect the availability of witnesses and records which may have been available to him if a timely indictment had been returned.  Upon information and belief, key witnesses and documents are no longer available to Mr. Culligan. The person closest to him and uniquely qualified to testify in his defense, his wife, passed away in mid-2001 – some three years after authorities seized documentary evidence from Mr. Culligan's business.  Notably, Mrs. Culligan was in a position to testify concerning her observations of Mr. Culligan's actions, intent and mental state at the time of the alleged offense.

Additional relevant and key documentary evidence has likely been destroyed or is otherwise unavailable.  Indeed, so far as we can tell, we have not even received all Fed. R. Crim. P. 16 discovery that we are entitled to from the government.

Mr. Culligan requests leave to amend this motion to permit him to make a further showing of prejudice after he has had an opportunity to review any additional document evidence to be provided by the government to determine the full effect of the lengthy delay, especially as it relates to business records and prospective witnesses which he is attempting to locate, and whom may no longer be available to Mr. Culligan.

Regardless, the Court should grant the motion and dismiss the Indictment with prejudice.

-15-

**V.      MOTION TO SUPPRESS DOCUMENTS OBTAINED BY LOCAL POLICE
ACTING PURSUANT TO A CIVIL SEIZURE ORDER THAT ALLOWED
SEIZURE OF DOCUMENTS WITHOUT ANY FINDINGS WHATSOEVER,
DID NOT INCLUDE A PROBABLE CAUSE DETERMINATION, AND
WAS A GENERAL SEARCH**

**A.      <u>Introduction</u>**

Defendant moves to suppress evidence (papers/books/records and copies of the same)

seized by Erie County, New York Sheriff's Office ("ECSO") deputies on June 23, 1998 from Mr.

Culligan's then-existing place of business, Mike Culligan Motors, Inc., in Buffalo, New York

(the "business").  The evidence was seized by ECSO deputies pursuant to an ex parte seizure

order issued by a New York State Supreme Court Justice, entered in a civil case, in which the

issuing judge did not make any findings related to probable cause (or any findings at all), and

which authorized seizure of *all* books and records of the business, without any limitation

whatsoever.  Despite the entry onto private property by police and seizure and taking away of

scores of records, no search warrant was applied for, granted or ever existed.  This was a search

by government agents and, at least in the context of a federal criminal case, violates the dictates

of the Fourth Amendment.  All evidence obtained as a result (as well as all fruit of the poisonous

tree) – which makes up almost the entire government case, so far as we can tell – must be

suppressed.

**B.      <u>Seizure by police without a search warrant or probable cause</u>**

What happened, that there was no warrant or probable cause, that there was a

search/seizure by government agents, that the seizure was of each and every document on the

premises of the business, and that the government will offer these items in its case in chief at

trial, are all undisputed.

-16-

Marine Midland sued Mr. Culligan, his wife, Sherry, and the business or around June 18, 1998 in New York State Supreme Court, Erie County.  The case was assigned index number 1998/5275.  On the same day, Marine Midland, through counsel, filed a motion for ex parte order of seizure and restraining order, supported by various attorney and other affidavits.  The ex parte motion is attached at Exhibit A.  The motion sought an ex parte order "pursuant to Article 71 of the CPLR seizing the books and records of defendants Mike Culligan Motors, Inc. related to plaintiff's collateral, allowing for inspection and inventory of plaintiff's collateral . . .", and for other relief.  Exhibit A, at 1.  The request was made as part of a civil – not a criminal – action and the request was premised on the terms of a retailer dealer's agreement, a contract, not on any violation of the criminal law.  The action was founded in the recovery of chattel, as N.Y. CPLR Article 71 provides.  All of Article 71 is based on seizure and preservation/return of property owned by one person from another, not criminal law or criminal violations.

The same day, the ex parte motion was granted by Justice Nelson H. Cosgrove, who apparently utilized a draft/form ex parte seizure order provided by Marine Midland's counsel. The order, attached as Exhibit B, recited that the motion had been made, and stated "**ORDERED**, that plaintiff's ex parte motion is granted, and the Erie County Sheriff is directed to seize without prior notice as to the defendants, the books and records of defendant Mike Culligan Motors, Inc. ("MCMI") related to the purchase, sale or trade of motor vehicle, and the proceeds received therefrom located at 270 Abbott Road, Buffalo, New York, and if these books and records are not delivered to the Sheriff, that he may open, enter and search for these items at said premises . . . ."  Exhibit B, at 2 (emphasis in original).  The Order further provided that "the Sheriff shall deliver MCMI's records to the plaintiffs who shall copy and return these records to

-17-

MCMI within a reasonable time after receipt of these records . . . ."  *Id.*  The order was not limited to records of vehicles in which Marine Midland had a security interest; rather, the order allowed the seizure of "the books and records . . . related to the purchase, sale or trade of motor vehicles, and the proceeds received therefrom . . . ." – in other words, *everything.*  Nor did the order make any kind of findings, either specific or general.  The order did not even say that it was being issued based on what was in the ex parte motion or affidavits, or that the motion was well taken; rather, the order was just "granted."

Five days later, on June 23, 1998, the ECSO deputies went to the business, entered, and seized all the records that the ex parte order authorized seizure of.  Attached at Exhibit C is the ECSO report and statement of action taken on order of seizure, which explains that deputies "seized the following chattels: the books and records of the defendant Mike Culligan Motors, Inc. related to the purchase, sale or trade of motor vehicles, and the proceeds received thereon."  Exhibit C, at 2.  The records were given by the ECSO to Marine Midland, who copied the documents, and the original documents were returned to the business.  *Id.*

The government received copies of the seized documents from Marine Midland, and now intends to use some or all of them in its case at trial.  The government also, we believe, identified other documents it has subsequently obtained as a result of the seized documents.  The government produced copies of at least some of the seized documents to the Defendant in pre-motion discovery.

-18-

C.   **Applicable law**

1.   **The Fourth Amendment and unconstitutional searches/seizures**

a.   *Generally*

Grounded in the text of the Fourth Amendment's protection of citizens against unreasonable searches and seizures, a search warrant may issue only when there is probable cause to believe that an offense has been committed and that evidence may be found that the place for which the warrant is requested." *Zurcher v. Stanford Daily News*, 436 U.S. 547, 558 (1978).  "In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting affidavit, there is a fair probability that contraband or evidence of a crime will be found at a specified place."  *United States v. Gladney*, 48 F.3d 309, 313 (8th Cir. 1995).   Probable cause must exist to seize all of the items of a particular type described in the warrant.  *See, e.g.*, *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).

b.   *General searches and overbreadth/particularity*

General searches are prohibited by the Constitution.  Case after case from the United States Supreme Court, and the United States Court of Appeals for the Second Circuit have condemned general searches, which have been called "wide-ranging exploratory searches." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *see also United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992) (describing general searches as "indiscriminate rummaging").  Such searches are "especially pernicious."  *United States v. Liu*, 239 F.3d 138, 140 (2d Cir. 2000).  They "have long been deemed to violate fundamental rights."  *Marron v. United States*, 275 U.S. 192, 195 (1927).

As a matter of constitutional law and practice, two closely related concepts protect

-19-

against general searches and the use of evidence derived from general searches – overbreadth and particularity.

The concept of "overbreadth" deals with the requirement that the scope of a warrant must be limited by the probable cause on which the warrant is based. *In re Grand Jury Subpoenas*, 926 F.2d 847, 857 (9th Cir. 1991); *United States v. Leary*, 846 F.2d 592, 605 (10th Cir. 1988) ("[A] search warrant is . . . impermissibly overbroad if it authorizes the search and seizure of evidence that is not supported by probable cause."); *Voss v. Bergsgaard*, 774 F.2d 402, 408 (10th Cir. 1985) (Logan, J., concurring) ("The breadth of a warrant must be justified by the breadth of the probable cause."). At the same time, overbreadth also deals with the requirement that the warrant particularly describe the items to be seized. *See United States v. Dockter*, 58 F.3d 1284, 1288 (8th Cir. 1995). As Professor LaFave emphasizes, "[t]he requirement of particularity is closely tied to the requirement of probable cause to search." Wayne R. LaFave, *Criminal Procedure*, § 3.4(f), at 227 (1984).

Concomitantly, the particularity requirement for warrants constitutes two essential requirements. First, the place to be seized must be described with particularity. *Coolidge v. New Hampshire*, 403 U.S. 443 (1971). Second, and more importantly for the present case, the things to be seized must be described with particularity. *Id.* With regard to the items to be seized, more than just an accurate listing of the items is required. That is, as part of the probable cause determination, the supporting affidavit must satisfy the issuing judge that there is a sufficient nexus between the place to be searched and the objects listed in the warrant. *See United States v. Christenson*, 549 F.2d 53, 57 (8th Cir. 1977); 2 Wayne R. LaFave, *Search and Seizure*, § 3.7(d), at 388 (3d ed. 1996). Therefore, the Court may only rely on the affidavit in determining whether

-20-

the government has demonstrated a sufficient *nexus* between the place to be searched and the

objects to be seized.

> **c.**      **Searches/seizures by government agents in "civil" cases --
> the Fourth Amendment still applies, both at the time of
> the search and in any subsequent determination of whether
> the seized items can be used by the government in a criminal
> case**

While the Fourth Amendment protects only against searches performed by the

government, its protection is not limited to seizures that take place in the context of a criminal

case or criminal arena.  As the court explained in *LaPrease v. Raymours Furniture Co., Inc.*, 315

F. Supp. 716 (N.D.N.Y. 1970):

> A search and seizure without a warrant can be made only in
> exceptional circumstances, and the search of a private dwelling
> without a warrant is presumptively "unreasonable." See e.g. *James
> v. Goldberg*, 303 F. Supp. 935, 940 (S.D.N.Y. 1969) (three-judge
> court) probable jurisdiction noted sub nom.  *Wyman v. James,* 397
> U.S. 904, 90 S. Ct.  921, 25 L. Ed. 2d 85 (1970)*,* and the cases
> cited therein.
>
> The argument that the Fourth Amendment does not apply [in a
> civil action], is supported by neither good sense nor law.  If the
> Sheriff cannot invade the privacy of a home without a warrant
> when the state interest is to prevent crime, he should not be able to
> do so to retrieve a stove or refrigerator about which the right to
> possession is disputed.  Nor should he have any greater right to
> make a seizure of these or similar chattels not within a building or
> enclosure by virtue of a requisition "*deemed* to be the mandate of
> the court," (emphasis added), but which in fact is the mandate of
> the plaintiff's attorney issued without the examination or approval
> of an intervening magistrate, and resulting in a taking against the
> will of the owner.  "It is surely anomalous to say that the individual
> and his private property are fully protected by the Fourth
> Amendment only when the individual is suspected of criminal
> behavior." *Camara v. Municipal Court,* 387 U.S. 523, 530, 87 S.
> Ct. 1727, 1732, 18 L. Ed. 2d 930 (1967).
>
> The Fourth Amendment does not exist simply as a shield to
> prevent intrusions in criminal matters, but is a basic protection

-21-

> available to all, in matters both civil and criminal.  See *Camara v.*
> *Municipal Court,* 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930
> (1967); *See v. City of Seattle,* 387 U.S. 541, 87 S. Ct. 1737, 18 L.
> Ed. 2d 943 (1967)*; James v. Goldberg, supra.* Further, if the
> possessor should resist or hinder a search and seizure provided for
> under § 7102 or § 7110, then he could be subject to criminal
> prosecution pursuant to N.Y. Penal Law, McKinney's Consol.
> Laws, c. 40, § 195.05. n

*LaPrease*, 315 F. Supp. at 721-22 (footnotes omitted) (emphasis in original).

The *LaPrease* court held that the former provisions of N.Y. CPLR §§ 7102, 7110 (part of

Article 71) that permitted seizures by the sheriff of property without a prior court order of a

judicial officer violated the Fourth Amendment and were unconstitutional on their face.  *Id.* at

722.  While Article 71 has been amended to provide for seizure after a finding by a judicial

officer, that amendment will not change the result here, as we explain below, because this is a

criminal case, no warrant was issued (just an order), there was no finding of probable cause or

finding of any kind (let along that evidence of a crime would be present) by the judge who issued

the order, and the seizure order was overbroad and not sufficiently particular.  There was a

Fourth Amendment violation by a general police search/seizure of all records here

> **2.    N.Y. CPLR Article 71 requires only a finding that it is probable
> that the plaintiff will succeed on the merits of its civil action to
> recover the property at issue; there is no requirement for probable
> cause that evidence/fruits of a crime exist at the location where the
> items exist, and in many cases, as here, no prior opportunity to be
> heard**

The requirements for the issuance of a seizure order under Article 71 are minimal.  All

the judicial officer has to find is that it is "probable that the plaintiff will succeed on the merits

[of the action to recover property] and the facts are as stated in the affidavit . . . ."  N.Y. CPLR

§7102(d)(1).  There is no requirement for probable cause to believe that the items sought are

evidence of a crime, that the items be particularly named or identified or anything of the sort –

just that the plaintiff is entitled to possession, and that is it.  And, the order can issue ex parte,

without an opportunity to be heard, which is exactly what occurred here.

> **D.**     **The seizure of the documents, done by police officers, without a warrant,
> without probable cause, and of all business records without any limitation
> violated the Fourth Amendment, and all seized records and fruit of the
> poisonous tree must be suppressed**

The seizure of records here was patently unconstitutional.  It was done without a warrant,

without a judicial finding that probable cause existed to believe the evidence of a crime existed

(under either New York or federal law), was effectuated by police officers, and entailed a

general search/seizure of all business records relating to motor vehicles, with no limit of any

kind on the types of records taken.  The fact that an ex parte order was issued by a state judge in

a civil case in no way saves the search, given that the judge made no findings whatsoever, even

under the civil statute at issue, and that statute required only a finding that the property belonged

to the civil plaintiff.

While we think that N.Y. CPLR Article 71's provisions *generally* violate both the Fourth

and Fourteenth Amendments[1] to the United States Constitution, the Court need not reach those

general issues, because *this particular search* here violated both amendments and was

unconstitutional.  The search and seizure of volumes of business records *here* was undertaken

without a judicial officer finding probable cause to believe that a crime had been committed and

that evidence of the crime was at the place to be searched.   Even so, the lesser standard for even

---

[1]     *See Fuentes v. Shevin*, 407 U.S. 67 (1972) (state statutes providing for summary
seizure of property under replevin, without notice, or prior opportunity to be
heard, violated Due Process).

-23-

issuing the civil seizure order (probability of success in the civil action) was not even shown to be satisfied in the order that was entered.   The search was executed by government actors – state/local law enforcement officials.  The civil order allowed the seizure of all records relating to motor vehicles, not just ones relating to particular vehicles or to ones in which Marine Midland had a security interest.   The violation of the Fourth Amendment here – the lack of a warrant, the lack of probable cause, overbreadth, no particularity, and a general/all records search – was blatant, obvious and requires suppression of all records seized.

It is of no moment that the federal government obtained the records from Marine Midland, because what we are challenging here is the unconstitutional seizure of the records/documents by a government actor – the ECSO.  That ECSO gave copies of the records to a civil plaintiff, who then turned them over to the federal government, does not dilute or obviate the taint of the original unconstitutional search.  The federal government did not *inevitably* discover the records, it *eventually* received them from a private party that had received them from a government agency after the government agency unconstitutionally seized them.  As a result the unconstitutional taint remains, and Mr. Culligan can challenge the original seizure – for without the original, unconstitutional seizure, the federal government would never have obtained the documents – that much is clear.  (Any claim that they would have been inevitably been discovered in the civil discovery process can be flatly rejected – after all, civil plaintiff Marine Midland sought and, presumably, got an ex parte seizure order because it alleged that the records would be transferred, altered or disposed of (Exhibit A, at 4-5).)   The taint is not sluffed off of the records being given by the seizing government police officers to a private party, and then to the federal government.  Nor is it sanitized by copying of the original documents – just as

-24-

an unconstitutional entry/search would not be saved by copying the items on site but not taking the originals from the location.

One of the truly mind boggling aspects of the seizure here was that it was of all business records related to the "purchase, sale, or trade of motor vehicles, and the proceeds received therefrom . . . ." Exhibit B at 2.  That is amazing because, for a search/seizure of items at a car dealership, ever piece of paper in the dealership relates to the sale.   Make no mistake about it, this was an unconstitutional general, all records search.  Second, there was no limitation of any kind relating to vehicles that Marine Midland purportedly had a security interest in.  Third, and self-evidently, there was no connection of any kind to items that were the fruits, evidence, related to any criminal activity of any kind.

There was also a Fourteenth Amendment Due Process violation here, as the items were seized without prior notice or opportunity to be heard, that statutory opportunity being eviscerated when the state judge signed the proposed civil order, without making any findings or factual findings in doing so.  This violated Mr. Culligan's Fourteenth Amendment rights, although the Court can rest its suppression decision on solely the Fourth Amendment violation, if it so chooses.

Because no warrant existed, there was no probable cause to search/seize, the civil process did not sanitize the Fourth Amendment violation and there was not even a finding that the civil requirements were met, and the items were seized without any regard to type of record or particularity, the general search/seizure was unconstitutional.   All items seized by the ECSO must be suppressed, and all items that are fruit of the poisonous tree must likewise be suppressed. *Mapp v. Ohio*, 3267 U.S. 643, 654 (1961); *Wong Sun v. United States,* 371 U.S.

-25-

471, 487-488 (1963).

### E.    Conclusion

There is nothing that could be offered by the government at an evidentiary hearing to save the unconstitutional search here, although we believe a hearing is necessary to determine the scope of the poisoned fruit that was obtained by the government as a result of the constitutional search/seizure.

After that hearing, the Court should enter an order or recommend that the motion be granted, and that all evidence seized by the ECSO be suppressed.

## VI.    MOTION FOR ORDER COMPELLING DISCLOSURE OF THE IDENTITIES OF ALL GOVERNMENTAL INFORMANTS

Mr. Culligan moves for disclosure of the names, addresses and criminal records of all informants utilized by the government in its investigation of this case.

In *Roviaro v. United States*, 353 U.S. 53 (1957), the Supreme Court held that a government informant's identity must be revealed where the defendant has demonstrated that disclosure is necessary to insure the defendant's right to a fair trial. Where the "disclosure of an informant's identity . . . is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause, the privilege [of non-disclosure] must give way." *Id.* at 60-61.

The information is also discoverable where the informant witnessed or participated in the criminal transaction. *Id.*

Disclosure of informant information in this prosecution is essential to a fair determination of the charges filed against the defendant. Mr. Culligan is entitled to know whether any government informants have any knowledge of whether Mr. Culligan was or *was not* involved in alleged criminal activity.

AO 72A
(Rev. 8/82)

In addition, the defense demands the following information about all informants:

    a.      All evidence affecting the issues of bias or credibility;

    b.      Their criminal records, *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980);

    c.      All promises or consideration of any kind given to the informants, *Giglio v. United States*, 405 U.S. 150 (1972);

    d.      Identification of the informants' prior testimony, *Johnson v. Brewer*, 521 F.2d 556 (8th Cir. 1975);

    e.      Evidence of psychiatric treatment of each informant or cooperating witness or person, *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir. 1983);

    f.      Evidence of the informants' narcotic habits, *United States v. Fowler*, 465 F.2d 664 (D.C. Cir. 1972);

    g.      Whether the informants are being compensated, including favorable plea agreements, in return for their cooperation with the government.  *United States v. Morell*, 524 F.2d 550 (2d Cir. 1975); and,

    h.      A review of the informant file kept by the authorities for each informant.

The inherent unreliability of the testimony of an accomplice or government informant underscores the need for complete disclosure of information relating to credibility.  *See United States v. Bagley*, 473 U.S. 667 (1985); *Perkins v. LeFevre*, 642 F.2d 37 (2d Cir. 1981); *United States v. Caldwell*, 466 F.2d 611 (9th Cir. 1972).  Put another way, "[t]he use of informants to investigate and prosecute persons is fraught with peril."  *United States v. Bernal-Obeso,* 989 F.2d 331 (9th Cir. 1993).  For these reasons, the identifies and information requested above should be disclosed by the government to Mr. Culligan.

## VII.   MOTION TO COMPEL DISCOVERY AND/OR PRODUCTION OF ITEMS AND TO BAR THE GOVERNMENT FROM OFFERING ANY EXPERT TESTIMONY AT TRIAL

The government has provided some voluntary discovery.  However, pursuant to Federal Rule of Criminal Procedure 16, the defendant moves to compel discovery of all items or information to which the defendant is entitled, as we are not sure that we have received all items to which we are entitled to under Fed. R. Crim. P. 16.  *Specifically*, this request includes, but is not limited to, the following:

    a.    copies of all records, including reports and/or logs, regarding radio transmissions from the officers at any "crime scene" regarding the investigation;

    b.    copies of any and all reports relating to the booking process in this case;

    c.    copies of any reports and/or test results relating to forensic tests run, including, but not limited to, any fingerprint analysis;

    d.    copies of any and all photographs taken relating to this investigation.

    e.    copies of any and all documents and photographs seized on the day of any search.

    f.    disclosure of the names and identities of expert witnesses the government intends to call at trial, their qualifications, subject of testimony, and reports, and the results of tests, examinations or experiments which are material to the preparation of the defense or which are intended for use by the government as evidence-in-chief at the trial;

    g.    a copy of any other search warrant or arrest warrant applied for and/or issued or denied during the course of this investigation (whether state, federal or local); and

    h.    pursuant to Rule 12(d) of the Federal Rules of Criminal Procedure, the defendant requests written notification of any evidence that the government intends to use in its case-in-chief that may, in any way, be subject to a motion to suppress and which the defendant is entitled to discover pursuant to Rule 16.

-28-

Defendant requests that the Court issue an order compelling the government to produce copies of such items or allow inspection of these items.

One of the Fed. R. Crim. 16 discovery requirements in which we have not received anything from the government regards experts.  The government has provided no notice of experts that it intends to use at trial, nor any c v's, resumes or the like.  The Court should enter an order, based on the government's nondisclosure, barring the government from offering any expert testimony of any kind at trial.

## VIII.   MOTION TO COMPEL PRODUCTION OF *BRADY* MATERIAL

The defendant moves for an order compelling the government to disclose all potentially favorable evidence, including, but not limited to: statements, grand jury testimony, witnesses, books, papers, reports, photographs, handwritten notes, synopses of statements made by witnesses, or any other tangible items of evidence in the custody and control of the government or any governmental agency or agents working with or under the supervision of the government. *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Agurs*, 427 U.S. 97 (1976); *United States v. Giglio*, 405 U.S. 150 (1972); *Napue v. Illinois*, 360 U.S. 264 (1959).  *Specifically*, this request includes, but is not limited to, the following:

a.   the names, titles and addresses of any person who has conducted any tests and/or analysis of any kind and/or prepared any reports relating to this case, with any law enforcement or government agency whatsoever.

b.   any negative or inconclusive test results and/or reports on any fingerprint and/or DNA analyses and/or tests conducted in this case; and,

c.   any records of employment discipline or sanction for any of the government's law enforcement witnesses.

This demand encompasses any and all information in the possession, custody or control

-29-

of the government, the existence of which is known, or by the exercise of due diligence may or should become known, to the attorney for the government.

The right to disclosure of all potentially favorable or exculpatory evidence exists whether such evidence is material either to the defendant's guilt or to the mitigation of his punishment, and regardless of whether such exculpatory evidence would be admissible in the defendant's behalf at trial.

Evidence which may serve to impeach the testimony or credibility of a prosecution witness falls within the *Brady* doctrine, since it consists of information favorable to the accused. *Giglio*, 405 U.S. 150.

Due process requires that the defense be given *Brady/Giglio* material in advance of trial so that investigatory leads may be pursued in sufficient time to permit a full preparation of the defendant's case. *United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3  n.1 (2d Cir. 1974); *United States v. Agajanian*, 852 F.2d 56 (2d Cir. 1988)*; United States v. Bejasa*, 904 F.2d 137, 140-141 (2d Cir. 1990); *Arizona v. Youngblood*, 109 S.Ct. 333 (1988); *Grant v. Alldredge*, 498 F.2d 376 (2d Cir. 1974); *United States v. Cobb*, 271 F. Supp. 159, 163 (S.D.N.Y. 1967).

The decision by the Second Circuit in *In re United States (United States v. Coppa)*, 267 F.3d 132 (2d Cir. 2001), does not change or limit the District Court's ability to order pre-trial disclosure of *Brady* and impeachment evidence.  Indeed, the Second Circuit in *Coppa* made clear that "[t]his case presents no occasion to consider the scope of a trial judge's discretion to order pretrial disclosures as a matter of sound case management."  *Coppa*, 267 F.3d at 146.  In a federal drug case such as this, sound case management requires early disclosure of impeachment and *Brady* material.  In fact, if *Brady* material is not *timely* disclosed *before* trial, any conviction

-30-

obtained as a result will be reversed.  *See, e.g.*, *United States v. Gil*, 297 F.3d 93, 108 (2d Cir.

2002).

In this case, it is impossible, and indeed not required under *Agurs*, to make a specific

request for all available *Brady* material. Nevertheless, the disclosure and production should

include, but not be limited to, the following:

    a.    any written or recorded statements, admissions or confessions made by any witness, and the name and address of any such individual, which may be exculpatory, non-incriminatory, or otherwise favorable to the defendant, or any summaries, synopsis, notes, memoranda, or resumes thereof, regardless of whether such statements are reduced to writing and regardless of whether the prosecution intends to use such statements at the trial herein;

    b.    the name and address of any other witness who might have favorable evidence as to the defendant, which are known, or which by the exercise of due diligence shall or should become known to the government;

    c.    any and all written statements made by any witnesses who have been interviewed by an agent of the government in connection with the subject matter of this case whom the government presently does not intend to call at trial, regardless of whether such statement has been signed or otherwise adopted or approved by said witness;

    d.    any notes, memoranda, summaries, reports, or statements of any kind prepared in connection with the investigation of this case which are in any way favorable to the defense including notes prepared by the government or any of its agents in connection with either the review of documents or the interview or other conversations with witnesses or other individuals contacted in connection with this case;

    e.    any and all prior criminal records of any witnesses intended to be used in any fashion by the prosecution, or any other such information demonstrating the commission on their part, or participation therein, of any so-called "bad acts" or other instances of immoral or criminal conduct, or conduct indicating a lack of veracity;

    f.    any and all statements, memoranda or other similar notations or information which would in any way reflect inconsistent statements made by any witness contacted by the government, or any such individual

-31-

engaged in lying or other conduct calculated to conceal the truth or improperly reflect facts;

g.      any information tending to indicate that information supplied by a particular document or witness contradicts or is contradicted by a different document or witness;

h.      any and all results of any scientific test, experiment, analysis, etc., which tend to indicate that a person other than a named defendant executed or caused to be executed any material which at all relates to the present Indictment; and,

i.      any and all surveillance reports of the defendant and any witness covering the period of time relevant to the offense(es) charged which qualify as *Brady/Giglio* material.

Defendant requests/demands all *Brady* material that is present in the government's possession regarding two putative government witnesses, Robert T. Bielaszka and Paul R. Delmonte, admitted criminals who have entered pleas to serious federal felony charges (case numbers 04-CR-235-A and 04-CR-129-A, respectively) and who the government has indicated it will call in its case in chief at trial.  Both of these criminals either have been sentenced or are awaiting sentencing, so the District Court and the government should be in possession of the draft and/or final presentence investigation reports, and, likely, pretrial services reports, as to each of these criminals.  The Court should inspect and disclose all portions of those reports, as well as any bail violation reports, that contain *Brady* material.  *See United States v. Pena*, 227 F.3d 23 (2d Cir. 2000) (standard for inspection/disclosure of exculpatory information in federal pretrial services reports); *United States v. Moore (Salami)*, 949 F.2d 68 (2d Cir. 1991) (standard for inspection/disclosure of exculpatory information in federal presentence reports).

Counsel specifically reserves the right to make additional requests for the material covered above at the time this motion is argued, or at such other time as the existence of such

-32-

materials shall become known to counsel for the defendant, and it is respectfully requested that the prosecution be admonished that its duty under *Brady/Giglio* is a continuing one.

## IX. MOTION FOR DISCLOSURE OF EVIDENCE PURSUANT TO RULES 404(b), 608 AND 609 OF THE FEDERAL RULES OF EVIDENCE

Pursuant to Rules 12(b)(4), (d)(1) and (2) of the Federal Rules of Criminal Procedure, and Rules 104(a) and 404(b) of the Federal Rules of Evidence, the defendant respectfully requests that the government notify the defendant of any evidence that the government contends would be admissible under Rule 404(b) of the Federal Rules of Evidence.

The defendant also requests pretrial disclosure of any other evidence the government intends to use to impeach the defendant's credibility if he should choose to testify. In the event the government intends to use such evidence, the defendant requests a pretrial hearing to determine the admissibility of such evidence.

The defense should be put on notice of the exact nature of this evidence, the witnesses pertaining thereto, the documents in support thereof, and the theory upon which the government asserts that admissibility rests. By so notifying the defense in advance of trial, the Defendant can file appropriate motion(s) *in limine* prior to trial and afford the Court the occasion to make pretrial determinations regarding the admissibility of any potential Rule 404(b) evidence proffered by the prosecution.

The defense requests discovery of all information pertaining to the character and/or conduct that may be used to impeach any witness the government intends to call.

The pretrial determination of the admissibility of this evidence question will serve to ensure the smooth operation of the trial, eliminate possible extraneous objections and assist both the government and defense counsel in the presentation of evidence.

-33-

## X.      MOTION FOR DISCLOSURE OF WITNESS STATEMENTS

Under 18 U.S.C. § 3500 (the "Jencks Act"), Defendant is entitled to witness statements

after the witness has completed his or her testimony on direct examination.  This Court has, on a

case-by-case basis, invoked its discretion to require production of Jencks Act statements in

advance of the trial so that unnecessary delays will not take place during the course of the trial.

The Defendant requests the Court to order the government to deliver to the Defendant

immediately, but in no event not later than four weeks prior to the date of the trial, the following:

   a.      any statement, however taken or recorded, or a transcription thereof,
           if any, made by the witness(es) to a grand jury;

   b.      any written statement made by a witness that is signed or otherwise
           adopted or approved by the witness;

   c.      any stenographic, mechanical, electrical or other recording or a
           transcription thereof, which is a substantially verbatim recital of an
           oral statement made by the witness and recorded contemporaneously
           with the making of such oral statement;

   d.      any and all rough notes of witness interview(s) taken or obtained in
           any investigation of the defendant including federal, state, local and
           other investigations whether or not the contents thereof have been
           incorporated in official records;

   e.      any notes and memoranda made by government counsel during the
           interviewing of any witness intended to be called by the government
           in its direct case.  *Goldberg v. United States*, 425 U.S. 94, 101-108
           (1976); and,

   f.      all surveillance reports made or adopted by a witness.
           *United States v. Petito*, 671 F.2d 68, 73 (2d Cir. 1932).

In addition to avoiding unnecessary delays, sufficient pretrial delivery of *Jencks* material

also insures that the defendant's fundamental rights to a fair trial and due process are

safeguarded.

-34-

Additionally, Defendant's request for witness statements and Jencks Act material also is directed toward disclosure of statements by witnesses that will testify at the expected evidentiary hearing to be scheduled in this matter.

## XI.     MOTION FOR PRESERVATION OF ROUGH NOTES AND OTHER EVIDENCE

Defendant moves for an order of this Court requiring all government agents and officers who participated in the investigation of the defendant in this case to retain and preserve all rough notes taken as part of their investigation whether or not the contents of the notes are incorporated in official records.

This motion is made so the trial court can determine whether disclosure of the notes is required under *Brady*, *Agurs*, *Giglio* and/or the Jencks Act (18 U.S.C. § 3500) or the Fifth and/or Sixth Amendments of the United States Constitution.

The Defendant also requests an order of this Court requiring the government to preserve and protect from destruction, alteration, mutilation or dilution any and all evidence acquired in their investigation of the defendant.

## XII.     MOTION FOR ACTIVE COUNSEL PARTICIPATION IN VOIR DIRE

Defendant moves the Court to issue an order allowing active counsel participation in *voir dire*.  While the undersigned understands that the Court conducts *voir dire* without attorney participation or with little attorney participation in the usual case, the Defendant requests some chance, however modest, to participate in jury selection.

*Voir dire* is a critical stage of the criminal proceeding.  For it to be meaningful for the Defendant's defense and to ensure a fair and impartial jury, active counsel participation, through at least a thirty minute opportunity for defense counsel to question jurors, should be granted.

-35-

Counsel participation in voir dire is necessary to protect against prejudice that the Defendant will face given the government's continued promotion of its efforts against white collar crime. His counsel is entitled to question jurors about such possible biases given the government's publicity efforts about its white collar prosecution efforts, and not to rely solely on questioning by the District Judge. The Court has the power to grant counsel participation in this case, and the Defendant requests that it do so.

## XIII.   MOTION FOR PRE-TRIAL PRODUCTION OF GOVERNMENT SUMMARIES

Defendant respectfully requests that the Court issue an order permitting him to inspect summaries the government intends to use at trial pursuant to Rule 1006 of the Federal Rules of Evidence, and the original books, records or documents that serve as the basis for any such summaries.

The government may attempt to introduce data, information or charts in summary form at the trial in this matter. Defendant makes this motion so that if the government does introduce this or any other types of summaries, trial in this matter may be expedited without the delay attendant to an in-trial examination of any such summaries and data.

Rule 1006 of the Federal Rules of Evidence provides:

> The contents of voluminous writings, recordings, or photographs which cannot be conveniently examined in court may be presented in the form of a chart, summary, or calculation. *The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place.* The court may order that they be produced in court.

Fed.R.Evid. 1006 (emphasis added). Rule 1006, by noting that such summaries are permissible where the underlying records "cannot be conveniently examined in court," and providing for examination at a "reasonable time and place," itself contemplates that a pre-trial, out-of-court

-36-

examination of such records is necessary.

Pre-trial review of summaries in this case is consonant with Rule 1006. It will allow the trial to proceed expeditiously by allowing Defendant to raise in advance any problems or issues with the summaries or underlying data. Pre-trial review will allow disputes to be resolved between the parties, with a minimization of Court involvement. Even if Court involvement is required, it will occur well before trial, and will therefore reduce trial delay.

This motion also requests pre-trial examination of all non-Rule 1006 pedagogical devices, or visual aids, that the government intends to use. Although such items are not admissible in evidence, similar considerations affect their use at trial. It may be disputed whether a particular visual aid clarifies the evidence, and whether limiting instructions are required. Therefore, Defendant also requests that the Court order pre-trial examination of all such devices that the government intends to use at trial.

For the foregoing reasons, Defendant requests that the Court issue an order permitting him to examine all summaries, pedagogical devices, and the data underlying such materials at least 45 days in advance of trial.

## XIV.   MOTION TO VOIR DIRE GOVERNMENT EXPERTS OUTSIDE THE PRESENCE OF THE JURY

Mr. Culligan moves the Court to issue an order allowing him to voir dire any proposed government experts at trial outside the presence of the jury.

Rule 104 of the Federal Rules of Evidence states that preliminary questions regarding the competency of a person called as a witness "shall be determined by the Court." A voir dire examination outside the presence of the jurors is the preferred method for determining the competency of an offered expert witness. *See, e.g.*, *United States v. 68.94 Acres of Land*, 918

-37-

F.2d 389, 391 (3d Cir. 1990); *see also, e.g.*, *United States v. Snow*, 552 F.2d 165, 168 (6th Cir.

1977) (defense counsel examined government expert outside of presence of jury regarding

qualifications); *United States v. Henson*, 486 F.2d 1292, 1303 (D.C. Cir. 1973) (en banc) (voir

dire of government expert outside the presence of the jury).

In the present case, Defendant has not received the names of and summaries of any of the

government's proposed experts, if any, pursuant to Rule 16 of the Federal Rules of Criminal

Procedure.  And this appears to be a case where expert testimony is neither needed nor

appropriate.  *See, e.g.*, *United States v. Cruz*, 363 F.3d 187 (2d Cir. 2004); *United States v.*

*Dukagjini,* 326 F.3d 45, 54 (2d Cir. 2003).  And, the government should be barred in any event

from offering expert testimony at trial because the government has failed to comply with Fed. R.

Crim. P. 16's requirements regarding expert disclosure, as we have received no expert disclosure

whatsoever.

However, Defendant makes this motion so that if the government subsequently identifies

any experts, Defendant may voir dire the expert outside of the presence of the jury.  Defendant is

entitled to challenge the competence of the government's proposed experts and the admissibility

of his/her testimony.  *See In re Chicago Flood Litig.*, No. 93 C 1214, 1995 U.S. Dist. LEXIS

10305, at *27 (N.D. Ill. July 19, 1995) (when question raised regarding basis for proffered expert

testimony, court permitted voir dire outside the jury's presence).

Therefore, Mr. Culligan requests that he be permitted to voir dire any government

expert or experts outside the presence of the jury, as to both competency and admissibility.

## XV.     MOTION FOR AUDIBILITY HEARING

Mr. Culligan moves the Court to hold an audibility hearing to determine whether any

tapes that the government seeks to introduce at trial are audible. The government has not identified or provided any recordings in discovery that it will introduce at trial. If the government does not intend to offer any such tapes, this motion will be moot. However, if the government does so, an audibility hearing should be held.

As the Court is aware, if portions of any tape are unintelligible, and the unintelligible portions of the tapes are so substantial as to render the recording as a whole untrustworthy, the tapes must be suppressed. *See United States v. Arango-Correa*, 851 F. 2d 54, 58 (2d Cir. 1988); *United States v. Aisenberg*, 120 F. Supp.2d 1345 (M.D. Fla. 2000). Therefore, in advance of trial, the Court should order the government to state whether it will introduce any audiotapes and/or videotapes at trial and then conduct a hearing to determine the audibility of the tapes the government plans to introduce at trial.

## XVI.   MOTION FOR LEAVE TO MAKE OTHER MOTIONS

The Defendant respectfully moves the Court for an order allowing him to make further and additional motions which may be necessitated by due process of law, by the Court's ruling on the relief sought herein, by additional discovery provided by the government or investigation made by the defense, and/or by any information provided by the government in response to the defendant's demands.

The specific requests contained in these motions are not meant to limit or preclude future requests by the defendant for further relief from this Court as appropriate. Specifically, Defendant reserves the right to make the following motions at an appropriate time in the case, based on ruling on the filed motions, as well other motions that may be appropriate based on later-provided or later-ordered discovery: 1) motions *in limine* related to evidence the

government or the Defendant intends to introduce at trial; 2) motion pursuant to Federal Rule of

Criminal Procedure 17(c) for an order allowing the pretrial production of documents; 3) motion

pursuant to Federal Rule of Criminal Procedure 15(a) for pre-trial deposition of a witness; 4)

motion for a supplemental jury questionnaire; 5) motion/s to dismiss; and/or, 6) Federal Rule of

Criminal Procedure Rule 29 motions at/during/after trial.

For these reasons, the Court should issue an Order allowing Defendant to make other

motions as requested above.

DATED:   Buffalo, New York, March 15, 2006

Respectfully submitted,

/s/Timothy W. Hoover

_____
Joseph B. Mistrett, Federal Defender
Timothy W. Hoover, Assistant Federal Defender
Office of the Federal Public Defender
Western District of New York
300 Pearl Street, Suite 450
Buffalo, NY 14202
(716) 551-3341
(716) 551-3346 FAX
joseph_mistrett@fd.org
timothy_hoover@fd.org
Counsel for Defendant Michael Culligan

-40-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                          **04-CR-305-A**

             v.

MICHAEL J. CULLIGAN,

             Defendant.

_____

### CERTIFICATE OF SERVICE

The undersigned certifies that he is an employee of the Federal Public Defender's Office for the Western District of New York, 300 Pearl Street, Buffalo, New York, and is of such age to serve papers.

On **March 15, 2006,** he served a copy of the attached by electronic service via CM/ECF:

ADDRESSEE:          William J. Gillmeister
                    Assistant United States Attorney
                    Western District of New York
                    138 Delaware Ave., Federal Centre
                    Buffalo, NY 14202
                    william.j.gillmeister@usdoj.gov

On **March 15, 2006**, he served a copy of the attached by: (   ) First Class United States Mail; (   ) hand delivery; (   ) facsimile; or, (   ) electronic mail:

ADDRESSEE:          [None]

                                        /s/Timothy W. Hoover
                              _____
                              Joseph B. Mistrett, Federal Defender
                              Timothy W. Hoover, Assistant Federal Defender
                              Office of the Federal Public Defender
                              Western District of New York
                              300 Pearl Street, Suite 450
                              Buffalo, NY 14202
                              (716) 551-3341
                              (716) 551-3346 FAX
                              joseph_mistrett@fd.org
                              timothy_hoover@fd.org
                              Counsel for Defendant Michael J. Culligan

## 04-CR-305-A

*UNITED STATES DISTRICT COURT*

*for the*

*WESTERN DISTRICT OF NEW YORK*

UNITED STATES OF AMERICA,

v.

MICHAEL J. CULLIGAN,

Defendant.

## NOTICE OF MOTION

**JOSEPH B. MISTRETT**
**Federal Defender**

**TIMOTHY W. HOOVER**
**Assistant Federal Defender**

**Of Counsel**

CM-ECF Filed March 15, 2006

*Office of the*
**Federal Public Defender**
**300 Pearl Street, Suite 450**
**Buffalo, New York 14202**
**(716) 551-3341**

SUPREME COURT
STATE OF NEW YORK        COUNTY OF ERIE
_____

MARINE MIDLAND BANK, successor by
conversion to MARINE MIDLAND BANK, N.A.

        Plaintiff,

   vs.

                             **NOTICE OF MOTION FOR
EX PARTE ORDER OF
SEIZURE AND
RESTRAINING ORDER**

MIKE CULLIGAN MOTORS, INC.            Index No.:
MICHAEL J. CULLIGAN
SHERRY L. CULLIGAN

        Defendants.
_____

        PLEASE TAKE NOTICE, that upon the Affidavit of Michael
B. Powers, Esq., sworn to June 18, 1998, the Affidavit of Dennis
M. Proefrock, sworn to June 17, 1998, the Affidavit of William
Bartlett, sworn to May 19, 1998, and the exhibits annexed
thereto, plaintiff, by its attorneys Phillips, Lytle, Hitchcock,
Blaine & Huber, LLP, will move this Court for an <u>ex parte</u> Order
pursuant to Article 71 of the CPLR seizing the books and records
of defendants-Mike Culligan Motors, Inc. related to plaintiff's
collateral, allowing for inspection and inventory of plaintiff's
collateral and restraining defendants from removing, transferring
or otherwise disposing of plaintiff's collateral and these books
and records until further Order of the Court.

1

DEFENDANT'S
EXHIBIT A

Dated:      June 18, 1998
            Buffalo, New York

                          PHILLIPS,LYTLE, HITCHCOCK
                          BLAINE & HUBER LLP

                          By:  Michael B. Powers, Esq.
                               Preston L. Zarlock, Esq.
                          Attorneys for Plaintiff
                          Marine Midland Bank
                          Office and Post Office Address
                          3400 Marine Midland Center
                          Buffalo, New York  14203
                          Telephone Number (716) 847-8400

521630.01

2

SUPREME COURT
STATE OF NEW YORK   ·   COUNTY OF ERIE

––––––––––––––––––––––––––––––––––––––––––

MARINE MIDLAND BANK, successor by
conversion to MARINE MIDLAND BANK, N.A.

        Plaintiff,

    vs.                                **AFFIDAVIT**

MIKE CULLIGAN MOTORS, INC.          Index No.:
MICHAEL J. CULLIGAN
SHERRY L. CULLIGAN

        Defendants.

––––––––––––––––––––––––––––––––––––––––––

STATE OF NEW YORK   )
COUNTY OF ERIE      ) SS:

       MICHAEL B. POWERS, being duly sworn, deposes and says:

     1.   I am a member of Phillips, Lytle, Hitchcock, Blaine & Huber LLP, attorneys for Marine Midland Bank, successor by conversion to Marine Midland Bank, N.A. ("Marine"), the plaintiff in this action, and am familiar with the matters set forth in this affidavit.

     2.   I make this affidavit in support of Marine's application for an ex parte order pursuant to Article 71 of the CPLR seizing the books and records of defendant Mike Culligan Motors, Inc. ("MCMI") for inspection and copying, allowing Marine to inventory its collateral located on defendants' property at 270 Abbott Road, Buffalo, New York and restraining defendants, until further order of this Court, from destroying, removing, transferring or altering these records, Marine's collateral, or the proceeds thereof.

3.    The facts of this application are set forth in
detail in the affidavit of Dennis Proefrock sworn to June 17,
1998 ("Proefrock Aff."). Briefly, on or about December 2, 1993,
the defendant MCMI and Marine entered into a Retail Dealer's
Agreement ("Agreement"). A copy of the Agreement is attached to
the Complaint which is submitted herewith. Defendants Michael
Culligan and Sherry Culligan are guarantors of MCMI's obligations
under the Agreement by virtue of their Unlimited Continuing
Guaranties ("Guaranties") of all of MCMI's obligations. The
Guaranties are also annexed hereto with the Complaint.

4.    Pursuant to the Agreement, Marine purchased from
MCMI certain contracts and security agreements relating to the
sale of vehicles by MCMI (collectively, "Contracts"). Each
Contract represented the indebtedness of a customer of MCMI with
respect to the purchase of a new or used motor vehicle from MCMI.
MCMI was obligated to segregate and hold in trust for Marine all
proceeds received in connection with any Contract purchased by
Marine, including but not limited to any customer payments, and
any returned or repossessed Contract vehicles. (Agreement, Misc.
¶11).

5.    By purchasing these Contracts, the vehicles and
the proceeds thereof become Marine's collateral. Accordingly,
the Agreement unambiguously provides that Marine shall have the
right to examine its collateral, including having unfettered
access to examine and make copies of all of MCMI's books and
records:

2

> 10. **Inspecting books, Records and Collateral.** The Bank shall have the right at any time during regular business hours to examine any collateral securing the Dealer's payment and performance obligations under this Agreement and to examine and make copies of any or all of the Dealer's books, records and documents (including but not limited to computer tapes and disks) concerning Dealer's participation in and transactions related to the retail program. In addition, the Dealer will deliver to the Bank at such time and in such form as the Bank shall designate schedules and reports relating to matters in connection with the Dealer's participation in and transactions relating to the retail program.

(Agreement, Misc. ¶10).

6. Defendants have taken actions with respect to Marine's collateral which establish that unless this order is granted without notice, and the defendants restrained until further Order of this Court, Marine's collateral will become unavailable for seizure by reason of being transferred, disposed of, canceled or concealed:

> i. Contrary to its obligations under the Agreement, MCMI had accepted vehicles in trade for which the Contracts had been assigned to Marine, without immediately providing payment for these vehicles to Marine. (Proefrock Aff. ¶¶ 8,21,22).

> ii. Defendants have submitted to the New York State Department of Motor Vehicles ("DMV") forged releases of Marine's security interests in Contract vehicles. (Proefrock Aff. ¶¶14-16; Affidavit of William Bartlett, and exhibits annexed thereto).

> iii. Defendants have double-financed vehicles whose Contracts had already been purchased by Marine, and secured these vehicles for other lenders leaving Marine unsecured. To hide these transactions, defendants have misrepresented the

3

status of Marine's security, and have continued payments after transfer so as not to alert Marine to the transfer. (Proefrock Aff. ¶¶9,10,23).

iv. Defendants submitted checks to plaintiff with insufficient funds as repayment for their repurchase obligations. (Proefrock Aff. ¶¶17,18).

v. Defendants misrepresented their assets to Marine in a financial statement, fraudulently concealing a mortgage which removes the only equity defendants had in certain property, rendering it worthless to Marine as collateral. (Proefrock Aff. ¶¶19,20).

vi. Defendants have not complied with Marine's repeated demand that MCMI remit payment to Marine for the Contract vehicles it has accepted in trade and that it repurchase any Contract for vehicles it double-financed. (Proefrock Aff. ¶13,23).

7. Of great immediate concern to Marine is defendants' flat refusal of Marine's request to inspect its books, records and collateral. (Proefrock Aff. ¶26). The Agreement unambiguously provides that Marine shall have this right because it is the only way Marine can accurately monitor its collateral. Accordingly, because of defendants' refusal of this access, Marine has no way of knowing the true status of its collateral and the extent of defendants' breach of the Agreement.

8. Because of defendants' actions as noted above, Marine has reason to believe that defendants have acted and are acting with intent to defraud Marine and frustrate the enforcement of any judgment which might be rendered in Marine's favor, and that Marine's collateral, including the books and records detailing these transactions, will be transferred,

4

altered, or, disposed of, and there will be no way to locate and
identify the proceeds without MCMI's records.

9.   Furthermore, as shown by defendants' financial
statements, the disappearance, impairment, or release of Marine's
security or collateral will render ineffectual any money judgment
ultimately obtained by Marine and will cause Marine immediate and
irreparable injury because defendants may not have adequate
assets to satisfy Marine's claims.  (Proefrock Aff. ¶¶27-30).

10.   For the foregoing reasons, plaintiff seeks an ex
parte order seizing MCMI's books and records, allowing plaintiff
to inspect and inventory all of MCMI's vehicles, and restraining
the disposition of Marine's collateral until further order of
this Court.

11.   Based upon the unambiguous language of the
Agreement and the defendants' open violation of it, Marine is
likely to succeed in this action is entitled to possession of the
collateral, and defendants have no defense to this claim.

12.   An action has been commenced.  However, defendants
have not yet been served.

13.   The books and records and vehicles are located at
the place of MCMI's business at 270 Abbott Road, Buffalo, New
York.

14.   The aggregate value of Marine's collateral in
defendants possession is presently believed to be approximately
$49,523.68.  However, since Marine seeks seizure of the books and
records only, it is requested that an undertaking not be

5

required, or that any undertaking that is required be far less than twice the value of all of Marine's collateral.  Further, Marine seeks these records only for a reasonably limited time period to inspect and copy them, and then will return them to defendants.

15.  Wherefore, Marine requests an Order seizing the books and records of MCMI for inspection and copying, allowing Marine to inventory its collateral located on defendants' property at 270 Abbott Road, Buffalo, New York, and restraining defendants, until further order of this Court from destroying, transferring, removing or altering these records, any other item of Marine's collateral, or the proceeds thereof.  Further, that if defendants refuse to surrender these books and records to the Sheriff, that the Sheriff be directed to open, enter and search MCMI's place of business for the books and records.

16.  No previous application for the relief sought herein has been made.

Michael B. Powers

Sworn to before me this
18th day of June, 1998.

Notary Public

521523.01

PRESTON L. ZARLOCK
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
MY COMMISSION EXPIRES MARCH 15, 19 99

6

Affidavit of Service
Blank County

225 B

DAVID F. WILLIAMSON CO., INC., PUBLISHERS
Ellicott Square Bldg., Buffalo, New York 14203

__Supreme__ Court __Erie County__

**MARINE MIDLAND BANK, successor by conversion to MARINE MIDLAND BANK, N.A.**

Plaintiff,

—vs.—

**MIKE CULLIGAN MOTORS, INC.
MICHAEL J. CULLIGAN
SHERRY L. CULLIGAN**

Defendant.

**AFFIDAVIT OF SERVICE
ON AN INDIVIDUAL
OR CORPORATION**

Index No. 1998/5275

**F I L E D**

State of New York          } ss.:
County of **ERIE**          }

**JUN 3 0 1998**

**ERIE COUNTY
CLERK'S OFFICE**

__Preston L. Zarlock__ being duly sworn, deposes and says that he is over 18 years of age and not a party to this action; that on the __26th__ day of __June__, 19 __98__ at approximately _____ PM __9:45__ AM at __Part 7, Erie County Hall, Buffalo__ New York deponent served the annexed __Summons & Complaint, Michael J. Culligan__ the defendant named herein, in the following manner: __Order & supporting papers__

☒ Individual — By delivering to and leaving with said __Michael J. Culligan__ personally a true copy thereof, and that he knew the person so served to be __Michael J. Culligan__ _____ the person mentioned and described in said __Summons & Complaint & Order__

☐ Corporation — By delivering to and leaving with _____ and he knew the person so served to be _____ of defendant corporation

☐ Responsible Person — By delivering to and leaving with _____ ( ) a true copy thereof, a person of suitable age and discretion. Said premises being the defendants (dwelling place) (usual place of abode) (place of business) within the State of New York.

☐ Substituted Service — By affixing a true copy thereof to the door of said premises the same being the defendants (dwelling place) (usual place of abode) (place of business) within the State of New York.

☐ Mail — Deponent also served a copy of the _____ by depositing a true copy of the same in a post-paid, properly addressed envelope in an official depository under the exclusive care and custody of the United States post office in the State of New York.

☐ Previous Attempt(s) — Deponent had previously attempted to serve the above-named defendant(s) pursuant to CPLR Sec. 308
at ........................... on the ......... day of ............... 19 ..... ..... PM ..... AM
at ........................... on the ......... day of ............... 19 ..... ..... PM ..... AM
at ........................... on the ......... day of ............... 19 ..... ..... PM ..... AM

☒ Description — The person served would be described as approximately __58__ years of age __210__ lbs. __6__ ft. __1__ in. __x__ male ____ female _____ hair __white__ skin __blue__ eyes other _____

☒ Military — To my best knowledge, information and belief the said defendant at the time of service was not engaged in military service of the United States.

Sworn to before me this __30th__ day of
__June__, 19 __98__

_Roxanne M Williams_
Notary Public or Commissioner of Deeds.
**ROXANNE M. WILLIAMS**
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 6, 19__99__

_Preston L. Zarlock_
Preston L. Zarlock

At a Term of the Supreme
Court, held in and for the
County of Erie on the
___18th___ day of June, 1998.

NELSON H. COSGROVE

PRESENT:  Hon. _____
                Justice Presiding

SUPREME COURT
STATE OF NEW YORK        COUNTY OF ERIE

MARINE MIDLAND BANK, successor by
conversion to MARINE MIDLAND BANK, N.A.

                Plaintiff,

        vs.                          ORDER OF SEIZURE
                                     WITH RESTRAINING ORDER

MIKE CULLIGAN MOTORS, INC.           Index No.: 1998/5275
MICHAEL J. CULLIGAN
SHERRY L. CULLIGAN

                Defendants.

_____

        Plaintiff having moved for an ex parte Order seizing
the books and records of defendant Mike Culligan Motors, Inc.
related to plaintiff's collateral, allowing for inspection and
inventory of plaintiff's collateral and for an order restraining
defendants from removing, transferring, altering or disposing of
plaintiff's collateral and the books and records concerning
plaintiff's collateral until further Order of the Court;

        NOW, UPON the Notice of Motion of plaintiff dated June
18, 1998, the Affidavit of Michael B. Powers, Esq., sworn to June
18, 1998, the Affidavit of Dennis M. Proefrock, sworn to June 17,

1

DEFENDANT'S
EXHIBIT B

1998, the Affidavit of William Bartlett, sworn to May 19, 1998, and the exhibits annexed thereto, and on motion of Phillips, Lytle, Hitchcock, Blaine & Huber, LLP, attorneys for the plaintiff, it is hereby

ORDERED, that plaintiff's ~~/~~ _ex parte_ motion is granted, and the Erie County Sheriff is directed to seize without prior notice to the defendants, the books and records of defendant Mike Culligan Motors, Inc. ("MCMI") related to the purchase, sale, or trade of motor vehicles, and the proceeds received therefrom located at 270 Abbott Road, Buffalo, New York, and if these books and records are not delivered to the Sheriff, that he may open, enter, and search for these items at said premises; and it is further

ORDERED, that a representative of Marine may inventory MCMI's vehicles located at said premises; and it is further

ORDERED, that the Sheriff shall deliver MCMI's records to the plaintiff who shall copy and return these records to MCMI within a reasonable time after receipt of these records; and it is further

ORDERED, that plaintiff need not provide an undertaking; and it is further

ORDERED, that until further Order of this Court, defendants, and any of their agents or employees are hereby restrained from removing, destroying or altering any of the aforesaid records or from moving or transferring any of plaintiff's collateral or property, or from releasing plaintiff's

2

liens on any collateral or otherwise encumbering or interfering
with plaintiff's security interests or collateral; and it is
further

　　　　ORDERED, that service of this Order shall be deemed
sufficient if served on the defendants in the same manner as a
summons; and it is further

　　　　ORDERED, that within five days after the Sheriff has
seized these items, the plaintiff shall move for an Order
confirming this Order of Seizure on eight days notice to
defendants and to the Sheriff. AND IT IS FURTHER

Ordered that the parties report back to this
Court on June 24, 1998 at 11:00 AM before Justice
Jerome C. Gorski, Part 20 Buffalo City Court, 50 Delaware Av
Buffalo N.Y.

Dated: ＿＿＿＿＿＿, 1998

NELSON H. COSGROVE　　　　J.S.C.

E N T E R,

**GRANTED**
JUN 1 8 1998 19＿＿
COURT CLERK
ROBERT ADAMSKI

**CERTIFICATION**

The undersigned, an attorney at law,
certifies that this copy of the fore-
going, furnished by him, has been
compared by him with the original and
that said copy is a true and complete
copy thereof.

3

SHERIFF'S RE.     AND STATEMENT OF ACTION TAKEN     ORDER OF SEIZURE

State of New York, ___Supreme___ Court,

County ___Erie___                        Index No. __1998/5275__

Sheriff's Docket Number __277193__    ~~COPY~~

**Plaintiff(s)**

    Marine Midland Bank, successor by conversion to
    Marine Midland Bank, N.A.,  vs.

    Mike Culligan Motors, Inc., et al

**Defendant(s)**

State of New York ) SS:
County of Erie    )

I, ___James E. Coyle___, certify that I am a Deputy Sheriff in the office
of ___Patrick Gallivan___, Sheriff of Erie County, and I took the following
action in this Order of Seizure:

1.) **Papers Served:**   (X) Order of Seizure   ( ) Undertaking   (X) 2 Affidavits
                (X) Summons   (X) Complaint
                (X) Notice of Motion

2.) **Time of Service:**   Date: __June 23, 1998__   Time of Day: __11:00 A.M.__

3.) **Address of Service:**   __270 Abbott Rd., Buffalo, N.Y. 14220__

4.) **Method of Service:**   **Personal Service CPLR 308(1):** The person served was: _____
    _____ who was, at the time of service the defendant garnishee
in the action, by delivering a true copy of the above described papers to that person.

**     **Corporate Service CPLR 310 or 311:** Service was made upon: _____
__Jack Lafferty__ who is the ___Manager___
for the defendant ~~garnishee~~ __Mike Culligan Motors, Inc.__
by delivering to and leaving with that person a true copy of the above described papers.

            **Alternate Service CPLR 308(2):** The person served was _____
_____ who was, at the time of service: _____
_____ to the defendant garnishee in this action by delivering to
and leaving with that person a true copy of the above described papers. Also, a true
copy was mailed by first class mail to: _____
the defendant garnishee at: _____

            **Affix and Mail CPLR 308(4):** Service was made upon _____
_____ the defendant garnishee in this action by affixing a
true copy of the above described papers to the door of the actual place of business-
dwelling place-usual place of abode and by mailing a copy of said papers to such person
at his her last known address actual place of business in an envelope bearing the legend
"personal and confidential" and not indicating on the outside thereof, by return address
or otherwise, that the communication is from an attorney or concerns an action against
such person. Such affixing and mailing were made within twenty days of each other.

(over)

```
┌─────────────────┐
│   DEFENDANT'S   │
│    EXHIBIT C    │
└─────────────────┘
```

Service Attempts: 1. _____
2. _____ **COPY**
3. _____

5.) **Description of Person Served:**   Age: dob: 10-8-48 Height: 6'3"   Weight: 230
Hair: Brown   Eyes: Blue   Skin: White   Sex: Male
Other: _____

6.) **Property Seized:**   In conjunction with the above, I seized the following chattels:
The books and records of the defendant Mike Culligan Motors, Inc.
related to the purchase, sale or trade of motor vehicles, and
the proceeds received therefrom.
_____
_____

which is not all of the property described in the Order of Seizure.

7.) **Disposition of Seized Property:** On the ___23rd___ day of ___June , 1998___
the above described property was released to the plaintiff-~~Defendant~~parties in the
action pursuant to Article 71 of the C.P.L.R. and/or pursuant to court order; AND,
such property was photocopied by the plaintiff at plaintiff's place of
business on June 23rd, June 24th and June 25th; AND, on June 25, 1998
the original documents seized were returned to the defendant

Dated at Buffalo, New York
this ___25th___ day of ___June , 1998___

_Shirley Ish_
_Commissioner of Deeds_
_Exp. 12/31/98_

_James E. Coyle_
James E. Coyle #872
**Deputy Sheriff Erie County**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



**FILED**

MAY 2 2 2006

CLERK, US DISTRICT COURT, W.D.N.Y.

UNITED STATES OF AMERICA,

v.

DWIGHT LEEPER,

Defendant.

DECISION AND ORDER
06-CR-58A

## **BACKGROUND**

On February 7, 2006, a grand jury empaneled on May 7, 2004

(the "May 2004 grand jury") returned a one-count indictment against the

defendant, Dwight Leeper, charging him with bank robbery in violation of

18 US.C. § 2113(a). The indictment read:

> On or about the sixth day of May 2004, in the
> Western District of New York, the defendant,
> DWIGHT LEEPER, did knowingly take from the
> person of another, money in the care, custody,
> control, management and possession of the
> Southern Chautauqua Federal Credit Union at 310
> Fairmont Avenue, Jamestown, New York, the
> deposits of which were then insured by the Federal
> Deposit Insurance Corporation.

1

Trial was scheduled to commence on May 15, 2006.  On May 5, 2006, a superseding indictment ("Superseding Indictment") was returned.  The purpose of the Superseding Indictment was to correct a mistake in the original indictment, which charged that the credit union was insured by the Federal Deposit Insurance Corporation, when in fact it was really insured by the National Credit Union Administration.

On May 15, 2006, the parties appeared for trial as scheduled.  A jury was selected, but not sworn.  After the jury had been empaneled and excused for the day, the Court brought to the parties' attention the case of United States v. Olson, 262 F.3d 795 (8th Cir. 2001), and requested briefing on the issue.  In Olson, the Eight Circuit had reversed a bank robbery conviction because the indictment had failed to allege all of the essential elements of the crime.  Specifically, the indictment failed to allege that the defendant had used force, intimidation and violence during the robbery.  As in Olson, Superseding Indictment against defendant Leeper (and the original indictment) failed to allege that he had used force, violence or intimidation during the course of the alleged bank robbery.

After reading the Olson case and apparently recognizing the defect, the government sought to remedy its error by again superseding

2

the indictment.  However, since the May 2004 grand jury had expired,[1] the

government was unable to have the May 2004 grand jury supersede.

Instead, on Tuesday, May 16th, the day after jury selection, the government

appeared before a *new* grand jury that had been empaneled on November

4, 2005 (the "November 2005 grand jury") and asked the November 2005

grand jury to supercede the Superseding Indictment.

On Wednesday, May 17th, the government advised the Court

and counsel that a second superseding indictment ("Second Superseding

Indictment") containing all of the required elements had been returned.

Upon questioning by the Court, it was revealed that the government had

presented the matter to a new grand jury.  Given the expediency with

which a new grand jury had been assembled, presented with evidence and

returned the indictment, the Court had reservations as to whether the

second grand jury had considered the matter anew, or whether it was just

"rubber stamping" a change to an indictment issued by a prior grand jury.

The Court asked to see the transcripts of the May 16th grand

jury proceeding, as well as the transcripts of the earlier grand jury

---

[1]  The May 2004 grand jury expired on May 7, 2006, after having been extended for an additional six-month period.

3

proceedings.  The transcripts were provided to the Court on Thursday, May

18, 2006.  The Court then directed that copies be provided to defense

counsel and that the parties provide briefing as to the propriety of the May

16th grand jury proceeding.  After reading the transcripts, reviewing the

briefs, and hearing argument from counsel, the Court finds that the

indictment must be dismissed because it was issued in violation of the

defendant's Fifth Amendment right to be indicted by an independent and

unbiased grand jury, and because that violation prejudiced the defendant.

## DISCUSSION

### A.   *The Violation*

The Fifth Amendment of the United States Constitution provides

that "[n]o person shall be held to answer for a capital, or otherwise infamous

crime, unless on a presentment or indictment of a Grand Jury . . ."  U.S.

Constit. amend. V.  The grand jury has been characterized as "a

constitutional fixture in its own right" that operates independently of both the

judiciary and the executive branch.   See United States v. Williams, 504

U.S. 36, 47 (1992).  Accordingly, to be valid, the Fifth Amendment requires

that an indictment issue from an *independent* and *unbiased* grand jury. This

4

requirement has long been recognized.  See Costello v. United States, 350

U.S. 359 (1956); see also Stirone v. United States, 361 U.S. 212, 218-19

("The right to have the grand jury make the charge on its own judgment is a

substantial right which cannot be taken away with or without court

amendment.").  If the Grand Jury Clause means anything,

> it means that a criminal indictment must actually
> issue from a grand jury, not some other source.  The
> fundamental concept underlying the Fifth
> Amendment guarantee is that in order for an
> indictment to be recognized as actually issuing from
> a grand jury, it must be the product of an
> investigative deliberation that is *independent* of both
> the prosecuting attorney and the court . . . . Without
> a guarantee of independence, the indictment would
> not be the genuine issue of a grand jury within the
> meaning of the Constitution.

See United States v. Sigma Int'l, Inc., 244 F.3d 841, 856 (11th Cir. 2001),

*rehearing en banc granted and opinion vacated by* 287 F.3d 1325 (11th Cir.

2002) (citations omitted)(emphasis in original).[2]  The Supreme Court

reiterated this point in United States v. Williams, when it stated that "the

Fifth Amendment's constitutional guarantee presupposes an investigative

---

[2] The Eleventh Circuit vacated its decision in Sigma Int'l upon granting a rehearing *en banc*.  The appeal was later dismissed as moot after the defendant pleaded guilty.  Nevertheless, the facts in Sigma Int'l resemble somewhat the unusual circumstances that occurred in this case and, as such, the Court found the Eleventh Circuit's analysis and reasoning to be helpful.

DEFENDANT'S EXHIBIT E

body acting independently of either prosecuting attorney or judge."

Williams,  504 U.S. at 49 (emphasis and quotations omitted).

A review of the May 16th grand jury proceedings reveals that the right to an indictment by an independent and unbiased grand jury was violated in this case.  Immediately after the grand jury was assembled on May 16th, the November 2005 grand jury was informed that an earlier grand jury had already indicted this defendant on one count of bank robbery and that their purpose here was to fix "a defect in the charging instrument."  The grand jury was also told that the trial had already commenced, that a petit jury had already been impaneled, and that the original grand jury was not able to supersede the indictment itself because it had expired.[3]

The prosecutor then advised the May 16th grand jurors that they were going to hear summaries of testimony that the original grand jury had heard, and that the transcripts of that testimony would be available to them for review.  The prosecutor also told the grand jurors that "the fact that some other grand jury heard this case should not play a part in your deliberation" and that they should make their "own determination."

---

[3]  Although the prosecutor did not expressly say that the original grand jury had expired, that was clearly implied by his statement that "[i]t would be more convenient, of course, if you had been the [original] grand jury . . . ."

6

Nevertheless, that admonition was meaningless in the context of the proceeding. Had the prosecutor really intended for the May 16th grand jury to reach its own independent determination without influence as to what another grand jury had done, there would have been no need to even mention the existence of an earlier indictment or the fact that the trial had started and that a petit jury had been empaneled. Certainly, one purpose in doing so was to convey a sense of immediacy and to assuage any concerns that the May 16th grand jury might have as to whether there existed sufficient evidence to indict by assuring them that another grand jury had already done just that after hearing the same evidence.

It is also clear from the transcript that the grand jury was led to believe that its purpose that day was merely to correct a technical error that had occurred in an otherwise validly issued indictment. In fact, one grand juror even asked whether the failure to include the missing element was merely an "oversight," to which the prosecutor responded *"yes, that is exactly right"*. Another prosecutor told the jury they were just being asked simply to correct *"omissions in paperwork"* that occurred with the original indictment, and that there were no defects relating to the presentation of the evidence.

7

The failure to include an essential element in the charging instrument can hardly be considered a mere "oversight" or "omission in paperwork."  A charge is not valid unless it includes all of the essential elements of the crime.  The same defect occurred in <u>Olson</u>, and the Eighth Circuit found it so significant that it warranted the dismissal of the defendant's bank robbery conviction.  See <u>United States v. Olson</u>, 262 F.3d 795 (8th Cir. 2001).

The prosecutors' characterization of the defect as a mere "oversight" or "omission in paperwork" inferred to the November 2005 grand jury that, but for the expiration of its term, the first grand jury would have voted to correct the "oversight" itself.  That improper inference placed "significant pressure . . . upon the [second] grand jury to 'rubber stamp' the indictment out of deference to the [original] grand jury."  See <u>Sigma Int'l</u>, 244 F.3d at 871.

The remainder of the proceeding further exacerbated these errors.  It is evident from the transcript and the length of the proceeding (about an hour) that the prosecutor hurriedly ran though select portions of *some* of the testimony that had been considered by the original grand jury.  Although he purported to be quoting from the original transcripts, he often

8

deviated from them, providing summaries instead of actual quotes. In doing so, he became an unsworn witness before the grand jury.[4] The jury was also misled into believing that it was being provided with *all* of the testimony that had been considered by the original grand jury, when in fact that was not the case. Furthermore, the May 16th grand jury was never advised that it could hear from the witnesses themselves or request additional evidence. It is the Court's understanding that the entire proceeding lasted only about one hour, and that the grand jury had the full transcripts[5] in their possession for consideration for only about 10 minutes before issuing the Second Superseding Indictment.

The haste of the proceeding, the jury's knowledge that another grand jury had already indicted the defendant, the prosecutors' assurances that the error was merely an "oversight" or an "omission in paperwork," the implication that the original grand jury would have fixed the error itself had it not expired, the immediacy with which the May 16th grand jury was being

---

[4]  On at least one occasion, the prosecutor's summary of testimony was inaccurate. The Court recognizes that the presentation of inaccurate summaries is not a sufficient basis for dismissing an indictment. See Bank of Nova Scotia v. United States, 487 U.S. 250, 261 (1988). Nevertheless, it is mentioned to show the extent to which the entire proceeding was flawed.

[5]  The Court also finds it troubling that the transcripts provided to the May 16th grand jury were evidently highlighted *by the government*, purporting to identify those portions of the testimony that were relevant to their consideration. This factor contributed to the undue influence placed upon the May 16th grand jury to return an immediate indictment.

9

asked to return the superseding indictment, and their knowledge that a petit jury had already been picked and the trial had started, all placed undue influence on the May 16th grand jury to return the Second Superseding Indictment without fully considering the matter. In light of these factors, the Court finds that a clear violation of the Fifth Amendment occurred.

**B.    *The Remedy***

Having found that the Fifth Amendment was violated, the Court now turns to the issue of the appropriate remedy. Federal courts have generally understood the authority to remedy grand jury errors flowing from two different sources: (1) the court's supervisory authority over the grand jury process; and (2) the constitution itself. See e.g. United States v. Larrazolo, 869 F.2d 1354, 1357-58 (9th Cir. 1989); United States v. McKenzie, 678 F.2d 629, 631 (5th Cir. 1982). "Dismissal of an indictment is . . . warranted on constitutional grounds if prosecutorial misconduct has undermined the grand jury's ability to make an informed and objective evaluation of the evidence presented to it." United States v. Sears, Roebuck & Co., 719 F.2d 1386, 1391 (9th Cir. 1983). Dismissal of an indictment pursuant to the Court's supervisory authority is permitted only when the

10

errors before the grand jury violated a clearly established procedural rule, a statute or the constitution.  See Williams, 504 U.S. at 46 and n. 6 (1992). [6] Whether derived from the constitution or from its supervisory authority, it is clear that this Court has authority to dismiss an indictment where it was issued in violation of the Fifth Amendment's guarantee of an unbiased and independent grand jury.

However, the Court may not dismiss an indictment unless it finds that the errors in grand jury proceeding actually prejudiced the defendant.  See Bank of Nova Scotia v. United States, 487 U.S. 250 (1988).  In determining whether prejudice has occurred, the inquiry is on whether the alleged violation had an effect on the grand jury's decision to indict.   Id., at 263.  In other words, the inquiry is focused on whether the alleged errors infringed upon the grand jury's "ability to exercise independent judgment." Id. at 259.  To find prejudice, the alleged violation must have "affected the charging decision."  Id. at 259-60.

There can be no doubt that the irregularity of the May 16th

_____

[6] In Williams, the Court held that a federal court's supervisory authority does not permit it to dismiss an indictment for failure to provide the grand jury with exculpatory evidence because federal courts cannot prescribe standards of prosecutorial conduct before grand juries in the first instance.  Rather, the supervisory authority may be exercised only where the errors violated a statute, constitutional guarantee, or an established rule of criminal procedure.

11

proceedings affected the grand jury's decision to issue the Second
Superseding Indictment. The May 16th grand jurors were most certainly
predisposed to indict after hearing that a prior grand jury -- upon hearing the
same evidence -- had found sufficient probable cause to indict. Any lingering
doubt as to whether probable cause existed was likely alleviated by the
prosecutors' assurances that the requested change was merely an
"oversight" or an "omission in paperwork," and by their inference (whether or
not intended) that the original grand jury would have corrected the "oversight"
if it had had the opportunity. As it is clear that the improper information
"substantially influenced the [May 16th] grand jury's decision to indict," Bank
of Nova Scotia, 487 U.S. at 256, the Court finds that the defendant has
suffered prejudice as a result of this constitutional violation.

　　　　Nothing in this Decision and Order is meant to suggest that the
Court believes the government attorneys were acting in bad faith. On the
contrary, in the Court's view, their hasty actions were simply a misguided
attempt to salvage their fatally flawed indictment. Nevertheless, in
determining whether the defendant suffered prejudice, the inquiry "focuses
not on the degree of culpability of the prosecutor, but on the impact of his
misconduct on the grand jury's impartiality." Sears, Roebuck, 719 F.2d at

12

1391. To let the indictment stand under these circumstances would make a mockery out of the entire grand jury process and would render the Grand Jury Clause a nullity. Accordingly, the Court finds that the indictment must be *dismissed without prejudice*.[7]


IT IS SO ORDERED.

/s/ *Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: May 22, 2006

---

[7] Although the defendant has requested that the indictment be dismissed *with prejudice,* the Court has found nothing in its research to support such a remedy. Indeed, the law is clear that a prosecutor may seek indictment before different or successive grand juries. See e.g., United States v. Contenti, 735 F.2d 628, 630 (1st Cir. 1984) (finding that no abuse of grand jury process occurred when the investigation was transferred to another grand jury after the first grand jury expired); United States v. Flomenhoft, 714 F.2d 708, 711-12 (7th Cir. 1983) (holding that an indictment returned by second jury was valid even though jurors chose not to hear live testimony, but relied on full transcripts from earlier grand jury proceeding). This well-settled principle would permit the prosecution to seek re-indictment of the defendant before a new *unbiased and independent* grand jury (i.e. a grand jury who is *unaware* that another grand jury had voted favorably upon indictment). Dismissal with prejudice is particularly inappropriate here because the Court believes the prosecutors did not intend to violate the defendant's Fifth Amendment rights -- it was simply the consequence of their actions. Finally, where constitutional violations have been found, the remedy is to restore the defendant to the position he would have been in but for the alleged violation. Dismissal of the indictment without prejudice accomplishes this result.

13

DEFENDANT'S EXHIBIT E